**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Lewis William HARRIS,**
**Defendant-Appellant.**

**No. 75–1903.**

United States Court of Appeals, Seventh Circuit.

Argued April 15, 1976.

Decided May 3, 1976.

Lester A. Pines, Madison, Wis., for defendant-appellant.

William J. Mulligan, U. S. Atty., Thomas E. Martin, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before SWYGERT and SPRECHER, Circuit Judges, and CAMPBELL, District Judge.*

WILLIAM J. CAMPBELL, Senior District Judge.

Following a jury trial, appellant was convicted of bank robbery in violation of 18 U.S.C. § 2113(a) and (b). On appeal, he argues that certain evidence obtained in a search of his apartment should have been suppressed by the trial court.

On March 3, 1975, Charles Edwardsen was arrested on certain State charges not otherwise pertinent to this appeal. Following his arrest, Edwardsen admitted to having participated in the robbery of the Western State Bank of Oshkosh, Wisconsin. He also told the arresting officers that clothing which had been worn during the robbery was in appellant's apartment, and agreed to accompany the officers to the apartment and surrender these items. Edwardsen stated that he had permission to use the apartment, but did not have a key. After arriving there, Edwardsen advised the officers that they could gain entry through sliding glass doors located at the side of the building. After gaining entry, Edwardsen directed the officers to the clothing, stolen money and a gun which had been used in the bank robbery.

Testimony disclosed that Edwardsen had been staying at the home of Shirley Lorentz at the time of his arrest, that he had known Harris about three weeks, that he had been present at defendant's apartment perhaps a dozen times, and that on one occasion he had remained at the apartment after defendant had left. This latter instance was apparently the only time that Edwardsen was present at the apartment in Harris' absence. On that occasion, Harris told Edwardsen that when he left he should lock the apartment.

Prior to trial, defendant moved without success to suppress evidence obtained as a result of the warrantless search of his apartment. Harris' sole contention on appeal is that the court erred in denying his motion, and although he suggests several different arguments in support of this contention, we find it only necessary to consider his assertion that Edwardesn lacked sufficient authority to validly consent to a search of Harris' apartment.

The government here seeks to justify the warrantless search by imputing to the defendant the consent given by Edwardsen. Both parties agree that the issue is controlled by the Supreme Court's decision in *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). They, of course, disagree regarding the proper application of that case.

In *Matlock,* the Supreme Court reiterated that

"[W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." 415 U.S. at 171, 94 S.Ct. at 993, 39 L.Ed.2d at 249.

In a footnote, the Court added that

"Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent . . . rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." 415 U.S. at 171, n. 7, 94 S.Ct. at 993, 39 L.Ed.2d at 250.

■ The government was required to prove by the preponderance of the evidence that (1) at the time Edwardsen consented to the search, the searching officers reason-

ably believed that he possessed the necessary common authority over the premises to validly consent to the warrantless search, and (2) that immediately prior to the search facts existed which established that he did in fact possess such authority.[1] In denying defendant's motion, the district court implicitly determined that the government had met its burden in both respects. We disagree.

The testimony disclosed that Edwardsen was not residing in defendant's apartment at the time of the search. He had known the defendant for only three weeks and had been alone in the apartment only once. On that occasion, which was apparently the last time Edwardsen visited the apartment,[2] he had been told by Harris before the latter's departure that upon leaving, Edwardsen should lock the apartment. Since Harris did not give Edwardsen a key, it can hardly be surmised that he expected Edwardsen to enter and leave the locked apartment at will. Under these facts, we are compelled to conclude that Edwardsen did not share with Harris the common authority over the premises necessary to validly consent to the warrantless search. This case quite clearly does not involve the "mutual use of the property by persons generally having joint access or control for most purposes . ." *Matlock, supra,* at 171 n. 7, 94 S.Ct. at 993, 39 L.Ed.2d at 250.

■ The foregoing facts were also known to the searching officers at the time they entered the apartment. In their light, we do not believe that Edwardsen's bald assertion that he had been permitted by Harris to use the apartment constitutes a sufficient basis for the officers to reasonably believe that Edwardsen was authorized to validly consent to the search. Accordingly, neither of the prerequisites for upholding a third-party consent is present in this case. Not only is there an absence of facts which establish that Edwardsen possessed the requisite authority over the premises, but at the time Edwardsen gave his consent, there was not a sufficient basis upon which the searching officers could reasonably have believed that such facts existed.

Nothing in the *Matlock* opinion requires a contrary finding. As compared to the facts of this case, those of *Matlock* were far more compelling. There, the third party who consented to the search of defendant's room was a woman with whom Matlock had been living. When the police officers arrived at the house, she greeted them at the front door dressed in a bathrobe and holding a child. She informed the police officers that she and Matlock had been sleeping together in the bedroom which was searched, and that they had lived together prior thereto at two other locations. The house within which Matlock's bedroom was located was owned by the mother of the woman who consented to the search. The room contained evidence that it was being occupied by both a man and a woman.

Under these facts, the Supreme Court held that Matlock and the woman who consented to the search of the bedroom had mutual use of the property and enjoyed joint access over the room for most purposes. In the instant case, the facts do not support a similar conclusion.

Accordingly, and for the foregoing reasons, the judgment of the district court is reversed, and the case is remanded for a new trial, with directions to grant defendant's motion to suppress evidence.

REVERSED AND REMANDED.

---

1. This two-step analysis was employed by the district court in *Matlock* and was approved by this court on appeal. 476 F.2d 1083, 1087 (1973). Although the Supreme Court reversed on the ground that the third party in that case did possess the necessary common authority over the premises, the Court cited with apparent approval the analytical procedure employed by the district court to resolve the issue. See,

415 U.S. at 167, 94 S.Ct. at 991, 39 L.Ed.2d at 247.

2. At the hearing below, Edwardsen indicated that he was aware that the sliding glass doors were not locked because he was the last person to leave the apartment and had left them unsecured.