UNITED STATES of America,
Plaintiff-Appellee,

v.

Scott D. SOR–LOKKEN,
Defendant-Appellant.

No. 76–1583.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted May 16, 1977.

Decided July 8, 1977.

Steven W. Snarr, Asst. U. S. Atty., Salt Lake City, Utah (Ramon M. Child, U. S. Atty., Salt Lake City, Utah, on the brief), for plaintiff-appellee.

David B. Havas of Gale, Havas & Lema, Ogden, Utah, for defendant-appellant.

Before HOLLOWAY and BARRETT, Circuit Judges, and BOHANON, Senior District Judge.[*]

BOHANON, Senior District Judge.

Scott D. Sor-Lokken (Sor-Lokken) appeals his nonjury conviction rendered February 17, 1976, on one of two counts charging possession of unregistered firearms in violation of 26 U.S.C. § 5861(d) and 5871. The trial court dismissed one count after determining that the relied upon evidence was obtained through an illegal search and seizure.

In July of 1975, Jean Gross Lokken, defendant's former wife, visited their children, who were in defendant's custody and living at his home. On that occasion she observed a weapon she identified at trial as being like the weapon defendant was charged in count one with unlawfully possessing. Count one, which was ultimately dismissed, alleged defendant's unlawful possession of a Thompson submachine gun. During this July visit, Mr. Sor-Lokken told Jean Lokken that the weapon was an "illegal gun" and "that it was (her) insurance that he wouldn't disappear with the children," for "if he did (she) could turn him in for possession of it." (R. Vol. 2, P. 14)

In the late afternoon of October 14, 1975, Detective Ann Grotegut of the Ogden City Police went to the Sor-Lokken residence in response to a complaint of possible child neglect. Detective Grotegut talked briefly with defendant's wife Ann Sor-Lokken, who then excused herself from the room, at which point defendant entered, referred to the detective as a "pig," and required her to leave immediately.

Later that same evening defendant visited Dr. Dan Rhodes (Rhodes), a personal friend, and informed Rhodes that defendant was taking his family and leaving town due to an apprehension that the police were going to take his children away. Defendant requested, and it was agreed, that Rhodes would "take care" of defendant's residence and personal property contained therein. Defendant gave Rhodes a key to his house and a handwritten, notarized note reading:

"I Scott Sor-Lokken do hereby Quit Claim all my household goods, cars, real and personal property to Dan Rhodes of Liberty, Utah. They are his items as of this writing to disperse, keep as he desires—710 (1910 hours) 14 October 1975. Scott Sor-Lokken"

Defendant and his family then left town.

Two days later, on October 16, Jean Lokken appeared at defendant's residence

* Of the Western District of Oklahoma, sitting by designation.

and was granted admission by Rhodes, who was checking on the property. She then began a search of the premises and after discovering two weapons, including the aforementioned Thompson submachine gun, she contacted Detective Grotegut who subsequently appeared with two other detectives. Jean Lokken invited the officers to enter the house and examine the weapons, following which the submachine gun was seized.

Later that evening the same three officers, accompanied by a Special Agent for the Bureau of Alcohol, Tobacco and Firearms of the U. S. Treasury Department, returned to defendant's residence to investigate the possibility that the remaining weapon should also be seized. Dan Rhodes was again present and the officers requested and received permission to search for and examine any weapons still located on the premises. The officers inquired as to Rhodes' authority to grant such permission and were shown the previously mentioned notarized note. Upon locating the remaining weapon Jean Lokken had earlier discovered, the ATF agent determined such to be a .30 caliber carbine with a M–2 designation, the unregistered possession of which is unlawful, and it too was seized. Defendant was convicted on count two of the indictment, charging him with unlawful possession of the M–2 carbine. Defendant-appellant challenges the legality of the search and seizure upon which his conviction was predicated.

The decisive questions presented for this court's consideration are:

1. Did Dan Rhodes possess sufficient authority to consent to a warrantless search of appellant's residence and property?

2. Was the admissibility of the M–2 automatic carbine rifle seized in the second search tainted by the illegality of the first search?

I.

■ No serious question is raised as to the voluntariness of Dr. Rhodes' consent precedent to the officers' evening search of October 16, 1975. When a consent search is at issue, establishing the requisite voluntariness is a question of fact to be determined from all of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). It appears from the record in this case that Rhodes' consent was uncoerced and freely given. The critical issue is whether Rhodes' consent rendered the evidence obtained in the search admissible against the defendant.

■ A search of property, without warrant and without probable cause, but with proper consent voluntarily given, is valid under the Fourth Amendment. *United States v. Gunter*, 546 F.2d 861, 867 (10th Cir. 1976). When the government seeks to justify a warrantless search by establishing voluntary consent, it need not show consent by the defendant but instead may demonstrate that permission to search was obtained from a third party who possessed either "common authority" over the inspected premises or property or some other "sufficient relationship". *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242. "Common authority," in this context has less reference to historical property concepts than to conditions of "mutual use of . . . property by persons generally having joint access or control for most purposes." Such condition exists where "it is reasonable to recognize" that the consenting party "has the right to permit the inspection in his own right and that . . . others have assumed the risk that (the consenting party) might permit the common area to be searched." *United States v. Matlock*, supra, 415 U.S. at 171, 94 S.Ct. at 993. The Fourth Amendment protects people, not places, and while an individual is legally secure wherever the constitution recognizes a justifiable expectation of privacy, that which a person knowingly exposes or allows to be exposed is not a subject of Fourth Amendment protection. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

Thus, where a defendant shared the use of his duffle bag with another person, consent by the latter to have the bag searched

was binding on the owner who "must be taken to have assumed the risk" that his companion "would allow someone else to look inside." *Frazier v. Cupp*, 394 U.S. 731, 740, 89 S.Ct. 1420, 1425, 22 L.Ed.2d 684 (1969). Likewise, a gratuitous bailee in possession of a borrowed car has been held capable of giving consent, binding against the owner, to have the trunk searched. *United States v. Eldridge*, 302 F.2d 463 (4th Cir. 1962).

■ Any issue as to the exact nature of the property interest bestowed upon Dr. Rhodes by defendant's "quit claim" deed, need not be reached. Such instrument, in any event, bestowed upon Rhodes the rightful ability to enjoy access to the residence and its contents. The totality of circumstances reasonably implies that defendant assumed the risk that Rhodes fairly might provide similar access to others.

## II.

■ It is well established that neither evidence seized during an unlawful search nor, as a general rule, evidence indirectly obtained as a result of such illegality is admissible against the victim of the search. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The exclusionary rule determines not only that illegally obtained evidence may not be directly presented to the court, but further that it may not be employed or relied on at all. *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920). "Of course this does not mean that the facts thus obtained become sacred and inaccessible." *Silverthorne, supra*, at 392, 40 S.Ct. at 183. Knowledge of these same facts gained from an independent source may still be employed. *Silverthorne, supra*.

■ The information inspiring both police searches on October 16 was initially obtained from a source totally independent and unrelated to any governmental investigation or action. Evidence obtained by a private individual uninvolved in any government search is not susceptible to exclusion under the Fourth Amendment. *United States v. Beasley*, 485 F.2d 60 (10th Cir. 1973). Jean Lokken's conveyance of information obtained by her during her July visit and her October 16 search provided sufficient impetus for officers to visit the residence on the evening in question apart from any information obtained during the officer's illegal afternoon search. The crucial test is whether the evidence in controversy was obtained through exploitation of some illegality. *United States v. Beasley, supra*, at 64. Such was not the case here.

■ Even if it were demonstrated that the officers' afternoon search was a necessary prerequisite to the evening search, the carbine would still be unsusceptible to exclusion.

"We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Wong Sun v. United States, supra*, 371 U.S. at 487, 488, 83 S.Ct. at 417.

Consent to search satisfies Fourth Amendment requirements apart from the presence or absence of probable cause to conduct a search. *United States v. Gunter, supra* ; *Anderson v. United States*, 399 F.2d 753 (10th Cir. 1968). The consent obtained in this case purged the disputed search of any possible taint.

Affirmed.