UNITED STATES of America, Appellee,

v.

Barlo Vernon SELBERG, Appellant.

No. 80–1255.

United States Court of Appeals,
Eighth Circuit.

Submitted June 13, 1980.

Decided Sept. 30, 1980.

Brian C. Southwell, Minneapolis, Minn., for appellant.

Joseph T. Walbran, Asst. U. S. Atty., Dist. of Minnesota, Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, STEPHEN-SON, Circuit Judge, and HANSON,* Senior District Judge.

LAY, Chief Judge.

Barlo V. Selberg was convicted of possession of an unregistered sawed–off rifle in violation of 26 U.S.C. §§ 5861(d) and 5871 and was placed on probation for three years under the Federal Youth Corrections Act, 18 U.S.C. §§ 5005–5026. The sole issue raised by Selberg on appeal is whether the weapon was seized by federal authorities as the result of an illegal search. The district court, accepting a magistrate's finding that the search was valid, emphasized that the search was based upon lawful consent as well as the proper exercise of the officer's public duties. We disagree; we reverse and remand with directions to suppress the evidence seized and grant a new trial.

Selberg lived in a mobile home in a trailer park in Blaine, Minnesota. Thefts and vandalism had occurred in the trailer park on several occasions. Selberg requested that his neighbor, James Lynch, watch Selberg's home for suspicious activity. Lynch claimed Selberg told him to call the police if necessary, although Selberg assumed Lynch would handle any problems that arose himself. Selberg offered Lynch a key to his house but Lynch declined it.

* William C. Hanson, Senior District Judge, United States District Court for the Northern and Southern Districts of Iowa, sitting by designation.

On Friday, October 19, 1979, Lynch saw Selberg drive away from his home with Selberg's home's front door open. An aluminum storm door was closed. The following morning the door was still open. The Lynchs had not observed any suspicious activity, but they were away much of Friday evening. There were no signs of vandalism or destruction. Lynch discussed the problem with his wife, and knocked on Selberg's door and received no response. The Lynchs agreed they should not close the door, for fear they would disturb fingerprints or be blamed themselves for any missing items. Mrs. Lynch then called the trailer park manager, who said she should call the police. She called the Blaine Police Department, and Officer Ham arrived at around 1:00 P.M.

Mrs. Lynch told the officer that Selberg had asked them to watch his trailer. She told him her husband had seen Selberg drive away the day before and that the door remained open; that no one responded to her husband's knocks; and that the possibility of burglary concerned them. She testified she did not believe she or her husband had permission to enter and that she did not give Ham permission to enter, but asked him to check out the mobile home. Ham was aware of thefts and vandalism in the area.

Ham then went to Selberg's home. After knocking several times and identifying himself, he opened the storm door and entered. He did not have a warrant. He was then able to see the living room and kitchen areas, where nothing was disturbed. A television set was still there, and there was a handgun on the floor. Ham then knocked on a closed door adjacent to the living room and identified himself. When there was no answer he opened the door and entered. He then found the weapon in question on the floor of a bedroom.

Ham then called his corporal, who told him to call Officer Russell Hanson of the Anoka County Major Crimes Unit. Hanson came to Selberg's home, entered without a warrant, and inspected the gun. Hanson called the FBI, and was referred to the Bureau of Alcohol, Tobacco & Firearms (ATF). ATF agent Paul Zamzow arrived, entered without a warrant, and inspected the gun. He then obtained a warrant and took the gun to the ATF vault. Ham remained at the scene throughout these events.

Selberg moved to suppress the evidence seized in this search. Magistrate McPartlin found exigent circumstances justified a warrantless entry and denied the motion. The district court accepted the Magistrate's conclusion, but emphasized there was also sufficient evidence to show Selberg had given the Lynchs sufficient authority to give Officer Ham consent to enter the home.

■ "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980) (footnote omitted). The government has the burden of justifying the warrantless entry under one of the recognized exceptions. These include consent to the search, search incident to a lawful arrest, and the emergency or hot pursuit exception. *United States v. Heisman*, 503 F.2d 1284, 1287 (8th Cir. 1974).

A. *Consent.*

■ We find insufficient evidence to hold that Selberg gave consent for the warrantless entry.[1] Although a third party may give consent, there must be proof the third party "possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974) (footnote omitted). The Supreme Court has defined "common authority" as:

[M]utual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable

---

1. The government bears the burden of proving consent by a preponderance of evidence. *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); *United States v. Matlock*, 415 U.S. 164, 177 n.14, 94 S.Ct. 988, 996 n.14, 39 L.Ed.2d 242 (1974).

to recognize that any of the co–inhabitants has the right to permit the inspection *in his own right* and that the others have *assumed the risk* that one of their number might permit the common area to be searched.

*Id.* at n.7, 94 S.Ct. at 993 n.7. (emphasis added).

*See, e. g., United States v. Finch,* 557 F.2d 1234 (8th Cir.), *cert. denied,* 434 U.S. 927, 98 S.Ct. 409, 54 L.Ed.2d 285 (1977); *United States v. Patterson,* 554 F.2d 852 (8th Cir. 1977); *United States v. Sor–Lokken,* 557 F.2d 755 (10th Cir.), *cert. denied,* 434 U.S. 894, 98 S.Ct. 274, 54 L.Ed.2d 181 (1977).

 In the present case, there exists no proof of common authority or control. The Lynchs were simply under instructions to watch Selberg's mobile home. They had no key, no access and admittedly did not believe they had permission to enter.[2]

Nor can it be said that the Lynchs had either implied or actual agency to grant permission for the officer to enter. *Cf. Stoner v. California,* 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). Here the agency, if any, was limited to watching the property; it is indeed a "strained application" to say that such a general instruction provides a neighbor the power to authorize a police officer to make a warrantless entry and search the home. *Cf. United States v. Heisman,* 503 F.2d at 1287–89; *United States v. Harris,* 534 F.2d 95 (7th Cir. 1976).

The most reasonable description of the situation seems to be that the Lynchs could and did bring the situation to the attention of the police. Once the officer arrived he was then obliged to evaluate the circumstances and see if entry was justified on some basis other than consent since the owner was absent and no third party with requisite authority and control was present to grant consent.

B. *Exigent Circumstances.*

 In applying the exigent circumstances doctrine, the burden is on the state to show the entry is within the exception, and an objective standard is used to evaluate the reasonableness of the officer's belief that exigent circumstances existed. *Root v. Gauper,* 438 F.2d 361, 364 (8th Cir. 1971). One exigent circumstance that may justify entry without a warrant is when the police "reasonably believe that a person within is in need of immediate aid." *Mincey v. Arizona,* 437 U.S. 385, 392, 98 S.Ct. 2408, 2414, 57 L.Ed.2d 290 (1978). *See also United States v. Nord,* 586 F.2d 1288, 1290–91 (8th Cir. 1978) (assistance to intoxicated person); *United States v. Miller,* 589 F.2d 1117 (1st Cir. 1978), *cert. denied,* 440 U.S. 958, 99 S.Ct. 1499, 59 L.Ed.2d 771 (1979) (abandoned boat; search justified in part by legitimate fear of drowning); *Wayne v. United States,* 318 F.2d 205 (D.C.Cir.), *cert. denied,* 375 U.S. 860, 84 S.Ct. 125, 11 L.Ed.2d 86 (1963) (report of unconscious woman). *Cf. Root v. Gauper,* 438 F.2d at 365 (injured man already removed, so no emergency justified entry). Other cases recognize that similar entries may be permissible to protect property on the premises. In all of these cases, however, there were facts suggesting an emergency threat to the property. *E. g., Michigan v. Tyler,* 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978) (firemen entering to stop fire, investigate causes and protect evidence); *United States v. Zurosky,* 614 F.2d 779 (1st Cir. 1979), *application for stay denied,* 445 U.S. 949, 100 S.Ct. 1596, 63 L.Ed.2d 784 (1980) (lights in a warehouse and suspicious activity by person inside); *United States v. Moskow,* 588 F.2d 882 (3d Cir. 1978) (neighbor reported noises next door and a missing padlock; officers noticed strong odor of gasoline); *United States v. Estese,* 479 F.2d 1273 (6th Cir. 1973) (police radio reported breaking and entering; defendant was not home, door was open and there was evidence it had been pried open; search under bed proper because burglar could be hiding there; seizure of sawed–off shotgun permitted). Implicit in these cases and in the rationale for

---

**2.** The state of mind of the third party giving consent is not controlling; the facts must be given an objective evaluation. *United States v.* *Heisman,* 503 F.2d 1284, 1289 (8th Cir. 1974) (third party saying he believed it would be all right to enter not sufficient).

all exigent circumstance cases is the principle that if there is no reasonable basis for concluding there was a threat to life or property, the entry and search are deemed improper. *See Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) (defendant removed from murder scene; warrant required before entry by investigators); *United States v. Young*, 553 F.2d 1132 (8th Cir.), *cert. denied*, 431 U.S. 959, 97 S.Ct. 2686, 53 L.Ed.2d 278 (1977) (initial entry proper but subsequent entry by evidence technicians improper); *United States v. Goldenstein*, 456 F.2d 1006 (8th Cir. 1972), *cert. denied*, 416 U.S. 943, 94 S.Ct. 1951, 40 L.Ed.2d 295 (1974) (when police were satisfied person not in room, further search improper); *Root v. Gauper*, 438 F.2d 361 (8th Cir. 1971); *United States v. Presler*, 610 F.2d 1206 (4th Cir. 1979) (initial entry proper where neighbor reported defendant missing and strange smell coming from apartment; once defendant was moved to hospital, search improper); *State v. Osborn*, 263 Ark. 554, 566 S.W.2d 139 (1978) (neighbor reported burglary in mobile home next door; had seen burglar flee; legitimacy of entry thereafter and of extensive warrantless search not established). *See also Horack v. Superior Court*, 3 Cal.3d 720, 91 Cal.Rptr. 569, 478 P.2d 1 (1970).

■ The situation at Selberg's mobile home presented no facts upon which Officer Ham could reasonably conclude a person was inside who needed immediate aid. He knew Selberg had driven away, and his car was still gone. Further, he had no reason to believe a crime had been or was being committed and that entry was necessary to protect Selberg's property. He knew James Lynch saw Selberg leave with the door open. No one had since reported any suspicious activity, and the trailer showed no signs of any criminal activity.

Even if it might be said that these circumstances justified entry to determine whether there was any disturbance, they do not justify intrusions into areas behind closed doors, where the apparent expectation of privacy would be higher than in the area immediately inside the front door

which Selberg had left open. A cursory look at the living room and kitchen could have satisfied the officer that there was no sign of disturbance and eliminated any fear there was an emergency threat to Selberg's property.

We find the initial warrantless entry by Officer Ham was without lawful consent and was carried out under circumstances which did not objectively demonstrate any emergency threat to persons or property.

We vacate the judgment of conviction, and remand for a new trial with direction that the evidence seized within Selberg's mobile home be suppressed.

Judgment reversed.

STEPHENSON, Circuit Judge, dissenting:

I respectfully dissent.

The majority correctly states that warrantless searches are presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980); *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). Yet, where the intrusion is legitimate, evidence found in plain view is admissible. *Coolidge v. New Hampshire*, 403 U.S. 443, 464–69, 91 S.Ct. 2022, 2037–40, 29 L.Ed.2d 564 (1971). Therefore, the first question is whether the initial entry was proper.

There are at least two general exceptions to the requirement of a warrant which merit consideration in this case. One of these is if the party consents to the search. *Zap v. United States*, 328 U.S. 624, 629, 66 S.Ct. 1277, 1279, 90 L.Ed. 1477 (1946). *See Katz v. United States, supra*, 389 U.S. at 358 n. 22, 88 S.Ct. at 515 n. 22. The other exception is if there are exigent circumstances that justify the search. *Coolidge v. New Hampshire, supra*, 403 U.S. at 465–69, 91 S.Ct. at 2037–40.

There is substantial evidence which supports the district court's finding that Selberg consented to the search. Selberg told Mr. Lynch to "keep an eye on the place." Defendant Selberg testified that two or three weeks before the incident in question

he had a conversation with his neighbor Lynch as follows: "I asked him [Lynch] if he would keep an eye on the house, on my mobile home, because I had some expensive material in there, my gun collection and my collections from World War I and World War II and the Civil War." Selberg further testified that on the day before the incident he again asked Lynch "if he would keep an eye on my mobile home." Lynch testified that on four or five occasions

> he [Selberg] said if there was anything going on around his place to call the police. * * * He said he had some, you know, some weapons and a few things in his house he wouldn't want to really get rid of, you know, so he just said if there is anything going on, just call the police.

Lynch further testified Selberg told him to "[w]atch his place. One time he left he offered me a key and I said no, that it was not necessary, I said if there is anything going on I will just contact the police, you know, and he says, 'Okay, fine.'"

It is reasonable to assume that this meant that if anything suspicious occurred, Mr. Lynch was to take appropriate action— which included calling the police and having them check out the mobile home.

A consent need not be explicit to be effective. The court can draw the consent from all the circumstances. *United States v. Sor–Lokken*, 557 F.2d 755, 757–58 (10th Cir. 1977), *cert. denied*, 434 U.S. 894, 98 S.Ct. 274, 54 L.Ed.2d 181 (1978). *See generally Schneckloth v. Bustamonte*, 412 U.S. 218, 221, 93 S.Ct. 2041, 2044, 36 L.Ed.2d 854 (1973).

It is my view, after reviewing the evidence, that there is substantial evidence from which the district court could find that there was a consent to the search. There had been several thefts in the neighborhood, including thefts from the Lynches.

There had been an automobile firebombing, vandalism, and other violent incidents. Selberg had a valuable war artifacts collection. He was justifiably concerned that someone might gain entry and steal or destroy the collection. He informed the Lynches of the existence of this collection. Indeed, he asked his neighbors to "keep an eye" on the trailer and said, according to Lynch, "if there is anything going on, just call the police." He even offered them a key. The Lynches noticed that although the outer glass door was closed that the inner wood door on Selberg's trailer was open and remained open for nearly a day. It was reasonable for them to be concerned. To the Lynches, it appeared that there might have been a burglary, or Selberg might have been hurt or ill. The open door was certainly an invitation to vandals or burglars to enter the house. Mrs. Lynch did what might be expected. She called the police, explained the situation to Officer Ham when he arrived and "asked him to check it" [the mobile home]. *See United States v. Sor–Lokken, supra,* 557 F.2d at 756–58.

In sum, there existed a condition to which Selberg had asked the Lynches to respond, which included calling the police. Under the circumstances, the district court was warranted in concluding that the entry of defendant's premises by Officer Ham was consented to by the defendant through the authorization given to his neighbors, the Lynches.

The second exception to the warrant requirement, that of exigent circumstances, is an alternative ground for justifying the search. The term "exigent circumstances" has been construed to include and justify a number of warrantless searches.

Examples of where courts have found exigent circumstances demonstrate that the courts follow a case by case examination of the circumstances.[1] A common thread run-

---

1. The courts have held that evidence in plain view is admissible when discovered while investigating another matter, *United States v. Zurosky*, 614 F.2d 779 (1st Cir. 1979), appl. for stay denied, 445 U.S. 949, 100 S.Ct. 1596, 63 L.Ed.2d 784 (1980); *United States v. Callabrass*, 607 F.2d 559, 563 64 (2d Cir. 1979);

*United States v. Estese*, 479 F.2d 1273, 1273 74 (6th Cir. 1973).. The officer need not be certain a crime had been or was being committed, *United States v. Presler*, 610 F.2d 1206, 1211 (4th Cir. 1979); *United States v. Williams*, 523 F.2d 64 (8th Cir. 1975), *cert. denied*, 423 U.S. 1090, 96 S.Ct. 884, 47 L.Ed.2d 101 (1976) (land-

ning throughout these cases is that the police were pursuing some good faith purpose made necessary by the circumstances and pursuant to their duty as police officers and were not using the situation as an excuse for discovering and securing evidence.

The search in the present case complies with this test. The search was entirely consistent with the exigencies of the situation, in light of the fact that a great deal of crime had occurred in the neighborhood, Selberg's door had been open for nearly a day, he had not been seen for over a day, he had asked his neighbors to "keep an eye" on the trailer, he had alerted his neighbors to the existence of a valuable weapons collection within the trailer, and the officer performed a restricted search. The officer sought to protest Selberg and his property. Officer Ham had cause to believe Selberg or his property were in danger, and his search was clearly limited to achieving this purpose.

Even though the initial entry of Officer Ham was justified, there still exists the question of whether opening the bedroom door was proper. Ham's entry into the bedroom was a logical continuation of his entry for the purpose of ascertaining whether there had been or there was a continuing burglary or vandalism or whether Selberg was in need of assistance. In general, it was reasonable for him to give the residence a cursory inspection to ensure that a crime was not being committed or had been committed and that Selberg was not in personal danger.

Upon opening the bedroom door, Officer Ham saw the sawed–off rifle. "It is established that objects falling into the plain view of an officer properly in a position to perceive the view are subject to seizure and admissible as evidence." *United States v. Johnson*, 541 F.2d 1311, 1316 (8th Cir. 1976).

The test for determining whether an item falls within the plain view rule is (1) the initial intrusion resulting in the "plain view" must be lawful, (2) discovery of the item must have been inadvertent, and (3) the incriminating nature of the item must be "immediately apparent." *Coolidge v. New Hampshire, supra*, 403 U.S. at 466, 91 S.Ct. at 2038; *Harris v. United States*, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968); *United States v. Cecil*, 457 F.2d 1178, 1180 (8th Cir. 1972).

These requirements were satisfied in the present case. The entry falls within either the consent or exigent circumstances exception to the search warrant requirement. The discovery was inadvertent. There is no evidence indicating the intrusion was pretextual. The item's incriminating nature was apparent because of the contraband status of most sawed–off rifles. *See United States v. Williams*, 523 F.2d 64, 66 (8th Cir. 1975), *cert. denied*, 423 U.S. 1090, 96 S.Ct. 884, 47 L.Ed.2d 101 (1976).

Once the evidence was seized, it was appropriate that the officer have others inspect it, even if this involved subsequent entries. Only that evidence properly within the plain view of the officers was seized without a warrant. The rifle was not removed from the premise until a warrant was obtained.

In conclusion, it is my view that the district court correctly held that the entry was within either the consent or exigent circumstances exception to the warrant requirement. The evidence seized was within the plain view of the officer, and his warrantless search was limited to an inspection of the premises for the purpose of ascertaining whether Selberg's property had been burglarized or vandalized or whether Selberg was in danger. The subsequent warrantless entries of other officers, at Officer

---

lord alerted police that nontenants might be staying in an apartment building). In addition, the courts have admitted evidence seized while police conducted a community caretaking function, *United States v. Wilson*, 524 F.2d 595, 598 (8th Cir. 1975), *cert. denied*, 424 U.S. 945, 96 S.Ct. 1415, 47 L.Ed.2d 351 (1976) (investigating and removing debris from scene of auto acci-

dent). Also, the courts have admitted such evidence seized while police investigate what appeared to be an emergency, *United States v. Moskow*, 588 F.2d 882 (3d Cir. 1978) (prevent a fire); *United States v. Nord*, 586 F.2d 1288, 1290–91 (8th Cir. 1978) (help a drunk). *See generally Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978).

Ham's request, were merely to inspect the sawed–off rifle and verify that it was a contraband firearm. The gun was not removed until a warrant was obtained.

I would affirm.