**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**William James McALPINE,
Defendant–Appellant.**

No. 90–6087.

United States Court of Appeals,
Tenth Circuit.

Nov. 27, 1990.

William P. Earley, Asst. Federal Public Defender, Oklahoma City, Okl., for defendant-appellant.

Leslie M. Kaestner, Asst. U.S. Atty. (Timothy D. Leonard, U.S. Atty., with her, on the brief), Oklahoma City, Okl., for plaintiff-appellee.

Before SEYMOUR, BALDOCK, and BRORBY, Circuit Judges.

SEYMOUR, Circuit Judge.

William McAlpine appeals the district court's denial of his motion to suppress evidence obtained during a warrantless search of his residence. We affirm.

## I.

On October 8, 1989, the Oklahoma City Police Department received a phone call from Dianne Hale, who reported that she was being held against her will by two men who had been sexually assaulting her. She advised the police that the men had threatened her with guns. The two responding officers, Sergeants Culbertson and Wise, called for backup and proceeded to the residence, located in a trailer park. When the officers knocked on the trailer door, Ms. Hale let them in.

Once inside the residence, Sergeant Culbertson began interviewing Ms. Hale. She told the officers that Mr. McAlpine had sexually assaulted her for six months, two of those months at the trailer, and that she did not leave because she was afraid that Mr. McAlpine would find her and kill her if she did. She had made the decision to call the police when Mr. McAlpine left her alone in the trailer. She also told the officers that McAlpine had forced her to take drugs and threatened her with weapons. She told them that she regularly slept in the bedroom located in the back of the trailer, where she had been handcuffed to the bed while Mr. McAlpine sexually assaulted her and took pictures of other men doing the same. Ms. Hale also reported to Sergeants Culbertson and Wise that this bedroom was where the guns were kept that were used to threaten her if she did not comply with Mr. McAlpine's demands. She further stated that she had personal property scattered throughout the rest of the residence. The officers testified at trial that Ms. Hale seemed afraid.

During the course of the interview, the officers noticed a hand-drawn silhouette of a police officer with the word "cop" on it. The silhouette had several bullet holes in the head. At this point the officers asked Ms. Hale to show them where the guns were located. When she pointed to the back of the trailer, Sergeant Wise walked down the hallway, scanning the bathroom and the front bedroom as he approached the bedroom in the rear. In the rear bedroom, he observed two guns, numerous handcuffs, gun cases, and ammunition lying on the headboard of the bed, along with various letters and documents with Mr. McAlpine's name on them. Sergeant Wise testified that all of these items were in plain view and that he did not search any closets, drawers, boxes or other closed containers. The officers stayed at the trailer for approximately fifteen to twenty minutes and then left with Ms. Hale, who had packed a small bag with some of her personal possessions. Nothing was seized from the residence at that time.

Based on the information obtained from the October 8 search, along with corroborating evidence gathered from an informant, a search warrant was executed on the trailer on October 24.[1] During the course of the search, the police seized, among other things, a semi-automatic pistol, a sawed-off shotgun barrel, a bulletproof vest, pamphlets describing how to convert firearms to machine guns, an improvised weapons manual, and numerous boxes of high-powered ammunition. A grand jury subsequently returned an indict-

---

1. Prior to the search, the police verified with the trailer park's resident-manager that Mr. McAlpine had leased, and still resided in, the trailer.

ment charging Mr. McAlpine with three firearm violations.

Mr. McAlpine filed a motion to suppress, arguing that the warrantless October 8 search was in violation of his Fourth Amendment right to be free from unreasonable searches and seizures. He contended that because the warrant obtained for the later search was substantially based on the product of the prior illegal search, the warrant was deficient under the fruit-of-the-poisonous tree doctrine. That is, Mr. McAlpine claimed that there would not have been sufficient evidence to support the magistrate's probable cause determination without the information procured in the warrantless search.

After an evidentiary hearing, the district court held that the October 8 search was constitutional, basing its conclusion on three separate grounds: first, the search constituted a protective sweep; second, the search was necessary to corroborate Ms. Hale's story; and third, Ms. Hale gave an effective consent to the search. Because we agree that Ms. Hale effectively consented, we need not address the merits of the first two grounds.

## II.

■ In an appeal of the denial of a defendant's motion to suppress evidence, our standard of review is to accept the trial court's findings of fact, unless clearly erroneous, and to consider the evidence in the light most favorable to the Government. *United States v. Soto–Ornelas*, 863 F.2d 1487, 1490 (10th Cir.1988); *United States v. Rios*, 611 F.2d 1335, 1344 (10th Cir.1979), *cert. denied*, 452 U.S. 918, 101 S.Ct. 3054, 69 L.Ed.2d 422 (1981).

■ "[A] search or seizure carried out on a suspect's premises without a warrant is *per se* unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions...." *Coolidge v. New Hampshire*, 403 U.S. 443, 474, 91 S.Ct. 2022, 2042, 29 L.Ed.2d 564 (1971). One specifically delineated exception is a search based on consent. *See Bumper v. North Carolina*, 391 U.S. 543, 548–49, 88 S.Ct. 1788, 1791–92, 20 L.Ed.2d 797 (1968).

Someone other than the subject of the search may give effective consent if she has a sufficient relationship to the property searched. *Illinois v. Rodriguez*, —— U.S. ——, 110 S.Ct. 2793, 2797, 111 L.Ed.2d 148 (1990) (citing *United States v. Matlock*, 415 U.S. 164, 171 n. 7, 94 S.Ct. 988, 993 n. 7, 39 L.Ed.2d 242 (1974)).

The government bears the burden of proving by a preponderance of the evidence that the consenter had mutual use of the property searched by virtue of her joint access to it, or control for most purposes over it. *Id.* 110 S.Ct. at 2797. This notion of "common authority" over the object of the search does not rest solely on abstract principles of property, but rather stems from a practical understanding of the way in which the parties to a given relationship have access to and share certain property. *See Matlock*, 415 U.S. at 170–71 & n. 7, 94 S.Ct. at 992–93 & n. 7; *United States v. Falcon*, 766 F.2d 1469, 1474 (10th Cir.1985); *United States v. Sor–Lokken*, 557 F.2d 755, 757 (10th Cir.), *cert. denied*, 434 U.S. 894, 98 S.Ct. 274, 54 L.Ed.2d 181 (1977); *see also Frazier v. Cupp*, 394 U.S. 731, 740, 89 S.Ct. 1420, 1425, 22 L.Ed.2d 684 (1969) (cousin who jointly used duffel bag with defendant situated to give valid consent). If common authority is established, the person whose property is searched is unjustified in claiming an expectation of privacy in the property because that person cannot reasonably believe that the joint user will not, under certain circumstances, allow a search in her own right. *See Matlock*, 415 U.S. at 171 & n. 7, 94 S.Ct. at 993 & n. 7; *Sor–Lokken*, 557 F.2d at 757; *see also Rodriquez*, 110 S.Ct. at 2804 (Marshall, J., dissenting) ("person voluntarily has relinquished expectation of privacy by sharing access or control over [her or] his property with another person"). Thus, in *Matlock*, the Court found a sufficient relationship when the consenter had slept for several months with the defendant in the bedroom searched and had kept her clothes in a dresser drawer on the premises. *See* 415 U.S. at 168–69 & n. 3, 94 S.Ct. at 991–92 & n. 3; *see also White v. United States*, 444 F.2d 724, 726 (10th Cir.1971)

(joint occupant authorized to consent to search contents of motel room registered in defendant's name); *United States v. Jones,* 580 F.2d 785, 786–87 (5th Cir.1978) (man who slept in defendant's apartment for week and kept clothes there gave effective consent).

In the present case, the consenting third party had resided for two months in the premises searched. There was uncontradicted evidence that Ms. Hale regularly slept in the back bedroom where the guns were found and that she kept personal possessions throughout the trailer. Mr. McAlpine could not have had a reasonable expectation of privacy in property that the consenter had mutual access to and used on a daily basis.

Mr. McAlpine contends, however, that a victim of a crime cannot, consistent with the Fourth Amendment, consent to a search of the alleged perpetrator's residence. He argues that because Ms. Hale was a "kidnap victim," she could not have had sufficient authority over his property to give effective consent. He further argues there was no evidence that either Sergeant Culbertson or Sergeant Wise believed "the woman was anything more than what she purported to be, the victim of a crime," Appellant's Brief at 15, and, therefore, the officers could not have reasonably believed she was in a position to give valid consent.

Because Mr. McAlpine's argument rests on false premises, its logic is deficient in several respects. First, as *Matlock* makes clear, the relevant analysis in third-party consent cases focuses on the relationship between the consenter and the property searched, not the relationship between the consenter and the defendant. While the character of the relationship between the consenter and the defendant may bear on the nexus between the consenter and the property, it is not dispositive of the issue of effective consent. Thus, there can be no *per se* rule that a crime victim cannot consent to a search of the perpetrator's residence.[2]

---

2. Mr. McAlpine's argument implicitly relies on the line of cases that analyzes the validity of third-party consent within the context of an agency framework, pursuant to the Supreme Court's statement in *Stoner v. California,* 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964), that the Fourth Amendment right "was a right ... which only the petitioner could waive by word or deed, either directly or through an agent." *Id.* at 489, 84 S.Ct. at 893. Courts engaging in this analysis deem a third party situated to give effective consent only if the subject of the search authorized that party, either expressly or impliedly, to "waive" the subject's Fourth Amendment right. *See, e.g., United States v. Stone,* 471 F.2d 170, 175 (7th Cir.1972) (Swygert, C.J., dissenting), *cert. denied,* 411 U.S. 931, 93 S.Ct. 1898, 36 L.Ed.2d 391 (1973) (disagreeing with majority holding that consent could be based on equal use and occupancy; advocating instead requirement of agency relationship); *Akin Distrib., Inc. v. United States,* 399 F.2d 306, 307 (5th Cir.1968), *cert. denied,* 394 U.S. 905, 89 S.Ct. 1013, 22 L.Ed.2d 216 (1969); *United States v. Greer,* 297 F.Supp. 1265, 1270 (N.D.Miss.1969); *People v. Flowers,* 23 Mich.App. 523, 179 N.W.2d 56, 58 (1970); *see also* 3 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 8.3(a) at 238–39 (2d ed. 1987); Comment, *Third–Party Consent Searches: An Alternative Analysis,* 41 U.Chi. L.Rev. 121, 128–31 (1973). Because the object of the relationship between a principal and an agent is to further the interests of the principal, an action taken by the agent that is antagonistic to the principal's interest does not fall within the scope of the agency. *Restatement (Second) of Agency* § 39 (1958) ("[A]uthority to act as agent includes only authority to act for benefit of the principal.").

Therefore, courts have refused to recognize as valid a consent to search a defendant's residence, even when the consenter cohabitates with the defendant, if the consent was given for the purpose of implicating the defendant in a crime, against the consenter or otherwise. *See State v. Gonzalez–Valle,* 385 So.2d 681, 682 (Fla. Dist.Ct.App.1980); *Kelley v. State,* 184 Tenn. 143, 146, 197 S.W.2d 545, 546 (1946); *see also May v. Texas,* 780 S.W.2d 866, 872–73 (Tex.Ct. App.1989) (court considered animus of estranged wife in determining effectiveness of consent). *But cf. State v. Radcliffe,* 483 So.2d 95 (Fla.Dist.Ct.App.1986) (calling into question reasoning in *Gonzalez–Valle*).

As our discussion above reveals, however, the agency analysis should have been put to rest by the Supreme Court's reasoning in *Matlock;* that is, it is the consenter's relationship to the property, not the tenor of her relationship with the defendant, that is determinative of whether she can permit a search in her own right. *See* 3 La Fave, *supra* note 2, at 242; *see also United States v. Crouthers,* 669 F.2d 635, 642–43 (10th Cir. 1982) (engaging in property nexus test despite evidence of consenter's antagonism toward defendant).

Second, to the extent Mr. McAlpine contends specifically that a kidnap victim cannot give effective consent to a search of her captor's premises, because a kidnapper never would allow the victim mutual use of or access to his residence and a police officer could therefore not reasonably believe that he did, his argument is premised on an inapt analogy. By defining Ms. Hale as a kidnap victim, Mr. McAlpine evokes the concept of a victim held for ransom tied to a chair in a secluded room, struggling to escape. Whether a police officer could reasonably believe that such a victim could effectively consent to a search of her captor's residence is a question we need not address, because Ms. Hale does not fit this paradigm.[3] Rather, she is a member of that class of victims who actually cohabitate with their abusers and who are not free to leave for fear of their physical or psychological well-being. Because these crime victims both sleep and carry out daily activities in the same residence with the perpetrator, they are entitled to give consent to a search of the residence in their own right. *See Matlock*, 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7. And, conversely, by virtue of this mutual access, the perpetrator cannot maintain a reasonable expectation of privacy in the shared property. *See id.; Rodriguez*, 110 S.Ct. at 2802 (Marshall, J., dissenting).[4]

Whether the police officer could reasonably believe Ms. Hale could give effective consent "must 'be judged against an objective standard: would the facts available to the officer at the moment … "warrant a man of reasonable caution in the belief"' that the consenting party had authority over the premises." *Rodriguez*, 110 S.Ct. at 2801 (quoting *Terry v. Ohio*, 392 U.S. 1,

21–22, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968)). Responding to what they called a "domestic disturbance," Sergeants Culbertson and Wise could have reasonably believed that, given the circumstances, Ms. Hale, although a crime victim, nonetheless was qualified to give effective consent to a search of the entire premises, including the back bedroom. We are disinclined to share, or impute to the police officers, Mr. McAlpine's myopic view of a universe of crime victims that excludes those who are victimized in the domestic arena.

Accordingly, we AFFIRM the district court's denial of Mr. McAlpine's motion to suppress.

---

**3.** In fact, Ms. Hale had gone to Mr. McAlpine's trailer voluntarily, and when she attempted to leave he would not let her. She told the police that she did not attempt to leave again because she was afraid Mr. McAlpine would kill her if she did, and also that he would send the photographs of her to her estranged husband, which would jeopardize her custody of their children.

**4.** We do not believe society is prepared to recognize as reasonable the expectation that the victim of one's assault will not seek aid from the police. *See Katz v. United States*, 389 U.S. 347,

361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring) (establishment of constitutionality protected privacy interest requires demonstration that (1) defendant exhibited subjective expectation of privacy, and (2) the expectation be one that society is prepared to recognize as reasonable); *see also* Comment, *supra* note 2, at 136 (unreasonable for defendant to believe that victim will preserve his privacy); 3 La Fave, *supra* note 2, at 244–45 (defendant's expectation of privacy diminished by virtue of antagonism toward co-inhabitant).