UNITED STATES of America, Appellee,

v.

Sylvester YOUNG, Jr., Appellant.

Nos. 76–1560, 76–1561.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 8, 1976.

Decided April 14, 1977.

Certiorari Denied June 6, 1977.
See 97 S.Ct. 2686.

Sloan R. Wilson, Kansas City Mo., on the brief for appellant.

Robert B. Schneider, Asst. U. S. Atty., Kansas City, Mo., for appellee; Bert C. Hurn, U. S. Atty., Kansas City, Mo., on the brief.

Before BRIGHT and WEBSTER, Circuit Judges, and TALBOT SMITH, Senior District Judge.[*]

WEBSTER, Circuit Judge.

Sylvester Young, Jr. was sentenced to three consecutive twenty-five year terms of imprisonment following his conviction on two counts of aggravated bank robbery and one count of attempted bank robbery, in violation of 18 U.S.C. §§ 2 and 2113(a) and (d). In this appeal he contends that the District Court[1] erred in failing to suppress physical evidence seized by evidence technicians in a warrantless search of the house where appellant had been apprehended. He also raises a number of alleged trial errors which will be considered seriatim. We affirm the judgment of conviction.

The evidence adduced at trial, viewed in the light most favorable to the verdict, showed that appellant participated in the armed robbery of the Goppert Bank and Trust Company in Kansas City, Missouri, on May 16, 1975, and the Central Bank, also in Kansas City, on August 28, 1975.[2] He also participated in the attempted armed robbery of the Goppert Bank on August 14, 1975.[3]

Following the August 28 robbery, in which at least three persons were known to have participated, appellant engaged in a shoot-out with the police tactical unit at a residence at 4429 Highland, Kansas City. His father, a Kansas City detective, persuaded him to surrender. After appellant surrendered, police demanded that any other occupants of the house surrender, but they received no response. They fired tear gas into the house, entered, and searched for other occupants. The house was vacant, but the police did see large quantities of money, some of it burnt, on the kitchen floor and stove.

As the police were leaving, police evidence technicians entered the house to secure evidence and take photographs. In the kitchen they found food redemption certifi-

---

[*] The Honorable Talbot Smith, Senior District Judge for the Eastern District of Michigan, sitting by designation.

[1] The Honorable William R. Collinson, United States District Court for the Western District of Missouri.

[2] In a separate trial, William Clyde Lewis was also tried for both of these robberies. He was convicted of committing the Goppert Bank robbery, but the jury was unable to agree upon his participation in the robbery of the Central Bank. His conviction was affirmed. *See United States v. Lewis*, 547 F.2d 1030 (8th Cir., 1976).

[3] Co-indictee Frederick James Amrine was apprehended and pleaded guilty to the charge of attempted robbery of the Goppert Bank and was sentenced to fifteen years of imprisonment.

cates on top of money on the floor and a deposit receipt from the Central Bank. In one bedroom they noticed a hole in a wall in which they found more money. They returned and completed their investigation the next day, August 29. No search warrant was ever obtained.

Appellant moved to suppress all evidence discovered in the house during the two days of warrantless searches. In response to appellant's motion, the government stated that it would not seek to introduce any evidence discovered on August 29. The District Court expressed its opinion that the August 29 warrantless search violated appellant's Fourth Amendment rights, but in view of the government's representations, denied as moot appellant's motion to suppress the evidence seized that day. It indicated its intention to admit all relevant evidence that was in plain view of the police when they entered the residence on August 28 to ascertain whether any other individuals were present. Following a second hearing at which the government produced evidence on what was seized on August 28, the District Court held all such evidence to be admissible under the "plain view" doctrine. It made no distinction between the evidence seen by the police searching for other robbers and weapons and the additional evidence seized by the evidence technicians who entered the house after it had been secured by the police. The District Court ruled that both the money found in the kitchen and that found in the hole in the bedroom wall would be admissible.

## I.

■ The original warrantless entry by the police to search for other occupants and weapons was proper under the exigent circumstances present at that time, as appellant apparently concedes. *See Warden v. Hayden*, 387 U.S. 294, 299, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *United States v. Briddle*, 436 F.2d 4, 7 (8th Cir. 1970), *cert. denied*, 401 U.S. 921, 91 S.Ct. 910, 27 L.Ed.2d 824 (1971); *United States v. Looney*, 481 F.2d 31, 33 (5th Cir)., *cert. denied*, 414 U.S.

1070, 94 S.Ct. 581, 38 L.Ed.2d 476 (1973). *See also United States v. Turbyfill*, 525 F.2d 57, 59 (8th Cir. 1975); *United States v. Hobson*, 519 F.2d 765, 776 (9th Cir.), *cert. denied*, 423 U.S. 931, 96 S.Ct. 283, 46 L.Ed.2d 261 (1975); *United States v. Blake*, 484 F.2d 50, 54 (8th Cir. 1973), *cert. denied*, 417 U.S. 949, 94 S.Ct. 3076, 41 L.Ed.2d 669 (1974); *United States v. Estese*, 479 F.2d 1273, 1274 (6th Cir. 1973).

As the Supreme Court said in *Harris v. United States*, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968), "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence."

■ The seizure of money taken from the bedroom wall by the evidence technicians, however, does not fall within the exigent circumstance exception to the search warrant requirement, and should have been excluded. The technicians were looking for evidence, not robbers, at a time when the house had already been secured and after appellant had been arrested. A search warrant should have been obtained before proceeding further. *See Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *United States v. Carter*, 173 U.S.App.D.C. 54, 522 F.2d 666 (1975); *United States v. Gamble*, 473 F.2d 1274 (7th Cir. 1973).

■ The use of the money found in the bedroom could readily be disposed of as cumulative and harmless error but for one unfortunate circumstance that requires a more careful examination of the record. In the course of investigation the money found in the bedroom wall was commingled with the money found on the kitchen floor. The government offered evidence showing that some of the commingled money was "bait money," identifiable by serial numbers as having come from the Central Bank. It becomes important to know whether some of the untainted evidence seized in the kitchen could be traced to the Central Bank, in order to exclude the possibility that the government's connecting proof was

derived exclusively from the tainted evidence taken from the bedroom wall.

The uncontroverted record reveals that none of the "bedroom wall" money had been burned. There was an abundance of burnt money found in the kitchen. Some of the money found there was contained in wrappers bearing the stamp of the Central Bank. In addition, the food redemption certificates bearing the stamp and the bank debit receipt found in the kitchen tied appellant to the Central Bank robbery, as did substantial other evidence.[4] Evidence of appellant's guilt was otherwise overwhelming, *Harrington v. California*, 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), the tainted evidence (which we deem to be the unburned money) was merely cumulative, and thus the error in admitting the money found in the wall was harmless beyond a reasonable doubt. *See United States v. Bishop*, 492 F.2d 1361, 1365 (8th Cir.), *cert. denied*, 419 U.S. 833, 95 S.Ct. 59, 42 L.Ed.2d 59 (1974).

## II.

■ Prior to trial, the government informed the District Court that if the defense asked government informant Grace Lawton if she had received any money from the F.B.I., then the government would ask her the purpose for which the money was paid. The money was paid to help her get reestablished after her apartment was firebombed. Defense counsel said that because of the possible implication in the minds of the jurors that appellant or his friends were in some way responsible for the firebombing, he would not pursue the matter of money from the F.B.I. if the Court intended to permit the government to bring out the purpose on rebuttal. The Court stated it would permit the government to elicit such testimony if the defense sought to impeach the witness on the basis of money from the

F.B.I. The defense chose not to ask her about the money.

Appellant contends that the District Court's advisory ruling was prejudicial error. We disagree. Defense counsel made a tactical decision. It is inappropriate to complain about prejudice on appeal since the allegedly prejudicial testimony was never offered at trial. This is not the same as an erroneous ruling excluding proffered testimony. Appellant's counsel simply did not offer it because he understood the District Court would permit rebuttal testimony. We note in passing, however, that this Court has upheld the government's use on redirect examination of otherwise inadmissible evidence that clarifies an issue opened up by the defense on cross-examination. *See United States v. Vaughn*, 486 F.2d 1318, 1321 (8th Cir. 1973); *United States v. Brown*, 482 F.2d 1226, 1228 (8th Cir. 1973. *See also United States v. Olsen*, 487 F.2d 77, 82 (8th Cir. 1973), *cert. denied*, 415 U.S. 993, 94 S.Ct. 1594, 39 L.Ed.2d 890 (1974).

## III.

Appellant also contends the Court erred in striking one member of the jury panel for cause and in refusing to strike two others. During the voir dire, venireman Lewis stated that he was familiar with news accounts surrounding the bank robberies and that he believed appellant was innocent. When the Court asked if any panel member felt he could not be a fair and impartial juror, Mr. Lewis stated that he was "not interested in convicting anybody." When asked if he would be prejudiced against conviction he responded, "That reasonable doubt in my mind, it would take an awful lot." The Court, over appellant's objection, granted the government's request to have him stricken for cause.

Appellant moved to strike fourteen persons from the jury panel. The District

---

4. A search of appellant's automobile, which was found behind the residence at 4429 Highland, conducted pursuant to a search warrant, turned up clothing worn by the robbers of the Central Bank. Informant Grace Lawton testified in detail as to appellant's participation in the planning of the robbery of the Central Bank. Dorothy Calhoun, who pleaded guilty to charges of conspiracy to rob the Goppert Bank on August 14, 1975, and the Central Bank on August 28, 1975, testified to appellant's participation in these two robberies.

Court granted all but three of those requests. Appellant here challenges the Court's refusal to strike juror Mabry, who was senior vice-president of a Kansas City bank and who had served on a grand jury, and juror Hilton, whose daughter had been robbed and raped. Both men stated they believed they could give appellant a fair and impartial trial, and both said they did not think their experiences would cause them to lean in favor of the prosecution.

▬ Rulings on juror qualifications will not be interfered with on appeal absent a clear showing of abuse of the sound discretion that is vested in the District Court. *United States v. Brown,* 540 F.2d 364, 379 (8th Cir. 1976). Unless actual bias is shown the Court's refusal to strike potential jurors will not be deemed a basis for error. *Id.* When the action complained of is the striking of a juror, an appellant is not entitled to relief unless he can show that the jury finally empaneled was not impartial. *See United States v. Burgard,* 551 F.2d 190, 195; (8th Cir. 1977); *United States v. Marshall,* 153 U.S.App.D.C. 83, 471 F.2d 1051, 1053 (1972). No such showing has been made in the instant case. The District Court carefully examined the potential jurors regarding their ability to give appellant a fair and impartial trial. It excused venireman Lewis, who expressed doubt as to his ability to be fair and impartial, but refused to strike Mabry and Hilton, who said they believed they could be fair and impartial. We find no abuse of discretion here.

### IV.

▬ Finally, appellant contends the Court erred in denying his motion for a mistrial when a government witness testified that appellant told her he did not want to go back to prison. The government was questioning the witness about her telephone conversation with appellant while he was barricaded inside the house during the shoot-out with police when she stated, "So I asked him to come out the house and he said he didn't want to back to prison." Appellant's counsel immediately asked to approach the bench and requested a mistrial. The Court denied the motion, but promptly and forcefully instructed the jury to disregard the statement. Appellant did not take the stand, and thus the jury would not otherwise have known he had previously spent time in prison.

While the comment by the witness was unfortunate, we do not think appellant was substantially prejudiced thereby. The witness' statement seems to have caught the government attorney by surprise as much as it did the defense attorney. The prompt cautionary instruction given by the trial judge in our judgment removed any likelihood of prejudice, and it is clear from the record that this testimony was not purposefully injected by the government. *See United States v. Scott,* 511 F.2d 15, 20 (8th Cir.), *cert. denied,* 421 U.S. 1002, 95 S.Ct. 2403, 44 L.Ed.2d 670 (1975). In contrast to *United States v. Ailstock,* 546 F.2d 1285 (6th Cir. 1976), the evidence of guilt here was very strong. Similar comments of a brief and passing nature, inadvertently made by witnesses, have been held to be harmless error. *See United States v. Gocke,* 507 F.2d 820 (8th Cir. 1974), *cert. denied,* 420 U.S. 979, 95 S.Ct. 1407, 43 L.Ed.2d 660 (1975); *United States v. Carter,* 448 F.2d 1245 (8th Cir. 1971), *cert. denied,* 405 U.S. 929, 92 S.Ct. 981, 30 L.Ed.2d 802 (1972); *United States v. Christian,* 427 F.2d 1299 (8th Cir.), *cert. denied,* 400 U.S. 909, 91 S.Ct. 153, 27 L.Ed.2d 148 (1970). Considerable discretion must be left in the trial judge, who saw and heard the entire proceeding and thus had the feel of the case in determining whether an asserted error is prejudicial. *Cline v. United States,* 395 F.2d 138, 142 (8th Cir. 1968). In light of the whole record, we cannot say the court's denial of the mistrial motion, coupled with the jury admonition, constituted reversible error.

Affirmed.