UNITED STATES of America, Appellee,

v.

Wayne WOMOCHIL, Appellant.

No. 84–2591.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 10, 1985.

Decided Dec. 9, 1985.

Rehearing and Rehearing En Banc
Denied Jan. 30, 1986.

J. William Gallup, Omaha, Neb., and a supplemental brief filed by Alan P. Caplan, Cleveland, Ohio, for appellant.

Stephen Anderson, Asst. U.S. Atty., Omaha, Neb., for appellee.

Before ROSS, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and ARNOLD, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Wayne Womochil appeals from a final judgment entered by the district court[1] on a jury verdict finding him guilty of one count of conspiring to distribute cocaine in violation of 21 U.S.C. § 846, and one count of possessing cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). The district court sentenced Womochil to twelve years in prison on each count, to be served concurrently, and ordered him to pay a $5,000 fine on each count. Womochil, who had been indicted along with ten other defendants, makes several arguments on appeal, centering on the admission of certain evidence and the allegedly improper conduct of the prosecutor. Finding none of Womochil's arguments to be of merit, we affirm the district court's judgment.

The indictment against Womochil and the other defendants resulted from a three-year investigation, jointly conducted by local and state law enforcement personnel as well as the Federal Bureau of Investigation (FBI), into illegal narcotics transactions in the Omaha, Nebraska area. The investigation was intended to uncover the identity of the "king pin" suppliers of cocaine in the area; that is, those persons responsible for distributing cocaine to individual sellers. After investigators had used conventional methods such as surveillance, pen register devices, and the use of informants, confidential sources, and undercover officers, the County Attorney for Douglas County, Nebraska applied to Douglas County District Court Judge James Murphy for electronic surveillance authorization. On July 13, 1982, the date of the application, Judge Murphy authorized the wiretaps for a period of thirty days from the date of hook-up, without terminating when the described communications were first obtained. Those phones authorized by Judge Murphy to be intercepted by wiretap included defendant Ronald Bartrem's residential line, two Omaha businesses' lines, and a dental laboratory. Upon applications supported by affidavits, thirty-day extensions of the interceptions were granted on August 12, September 10, October 19, and November 17 of 1982.

In addition to these telephone interceptions, the Douglas County attorney also sought and was granted authority on July 29, 1982 to place an electronic device, or "bug," in defendant Bartrem's apartment and at the dental laboratory. The bugs were used to monitor conversations between Bartrem and co-defendant Joseph J. Bongiorno in regard to the sale of cocaine. Subsequent extensions of this authorization kept the bugging devices in use through November 28, 1982. In brief, the evidence obtained through the use of the wiretaps and bugs disclosed that Womochil originally distributed cocaine to Harry Gilbert, who in turn distributed the cocaine to Bartrem and Bongiorno. Bartrem and Bongiorno, acting as partners, then distributed the cocaine to other individuals. Later in the conspiracy Womochil bypassed Gilbert to distribute cocaine directly to Bartrem, who bought the cocaine on behalf of himself and Bongiorno.

**I. Denial of Womochil's Motion to Suppress Evidence Obtained by Interception of Wire and Oral Communications**

Womochil, along with several of his co-defendants and other defendants in related

**1.** The Honorable C. Arlen Beam, United States District Judge for the District of Nebraska.

cases, filed a pretrial motion to suppress the evidence obtained by use of the wiretaps and bugs. The district court denied all such motions in *United States v. Van Horn*, 579 F.Supp. 804 (D.Neb.1984). On appeal Womochil argues that the district court's denial of his motion to suppress was improper for several reasons. First, Womochil contends that because the wiretaps were granted by a county judge upon application by the county attorney, the validity of the court authorization of the wiretaps should be determined by Nebraska law. Second, Womochil asserts that all of the authorization orders were invalid because the government failed to establish in the affidavits supporting its applications that normal investigative procedures had been used without success and without the prospect of success in the future. Third, Womochil argues that the authorization orders failed to comply with both state and federal statutes because they did not limit the interceptions to a period long enough to achieve the objective of the authorization. Fourth, Womochil maintains that because the Nebraska wiretap statute allows only officers of the state or a political subdivision thereof to make the interceptions, the FBI agents were improperly authorized to participate in the wiretaps. Finally, Womochil contends that the government made no attempt to minimize the interception of personal, "non-criminal" calls.

The district court thoroughly addressed and disposed of all of these arguments in its published opinion. *See Van Horn*, 579 F.Supp. at 809–817. We have carefully considered all of Womochil's contentions in regard to the propriety of the electronic surveillance conducted in this case, as well as the district court's exhaustive response to these contentions. We see no need to reiterate or elaborate on the district court's well-reasoned discussion. Womochil does not point to any flaws in the district court's opinion; indeed, he does not even cite to that opinion in his brief. We therefore affirm the district court's denial of Womochil's motion to suppress the evidence obtained by use of the wiretaps and bugs.

## II. Admission of Alleged Hearsay Evidence

Womochil next assigns as error the district court's admission of certain statements, which he contends constituted hearsay because they were not the statements of a coconspirator, nor were they made in the course of the conspiracy or in furtherance of it. Womochil asserts that impermissible hearsay testimony was admitted on two occasions at trial. The first occurrence of the testimony to which Womochil objects was on direct examination of Gilbert Lascala, an alleged coconspirator of Bongiorno's, Bartrem's, and Womochil's. The prosecutor questioned Lascala about whether he had ever discussed with Bartrem or Bongiorno their sources of cocaine:

Q: Did [Bongiorno] say who [Bartrem] was getting it from?

A: On one occasion there he said he was getting it from—

Mr. Gallup (Womochil's defense counsel): Oh, just a moment, Judge, that's hearsay.

THE COURT: Overruled.

Q: Did [Bongiorno] say from whom he was getting his—Ronald Bartrem was getting his cocaine?

A: He said he was getting it from his brother-in-law or a cousin or an uncle or somebody like that.

Mr. Gallup: I want to object again to that and move for a mistrial.

Transcript at 640–41. After a conference at the bench and an inchambers hearing the next day, the district court overruled the defendant's mistrial motion and permitted Lascala's answer to stand.

Because the evidence before this point in the trial had already established that Womochil was Bartrem's brother-in-law, Womochil alleges that this testimony was devastating to his case, despite the district court's comment to the contrary. He contends that because Lascala's testimony concerned a statement not made by Bartrem, but attributed to Bartrem by Bongiorno, the statement was inadmissible hearsay. Further, Womochil alleges that no founda-

tion was laid as to when the alleged conversation between Lascala and Bongiorno took place; such foundation would have to establish that the conversation took place during the conspiracy or it would not have been admissible.

■ We think Womochil's contentions are without merit, and that the testimony in question was admissible under Fed.R. Evid. 801(d)(2)(E) as the statement of a coconspirator of a party during the course and in furtherance of the conspiracy. For an out-of-court statement to be admitted against a defendant under the coconspirator exception of Fed.R.Evid. 801(d)(2)(E), the Government must show by a preponderance of independent evidence that a conspiracy existed, that the defendant and the declarant were members of the conspiracy, and that the statement was made during the course and in furtherance of the conspiracy. *United States v. Helmel,* 769 F.2d 1306, 1312 (8th Cir.1985); *United States v. Johnson,* 767 F.2d 1259, 1271 (8th Cir.1985). Womochil does not contend that a conspiracy did not exist, or that Bongiorno, Bartrem, and Lascala were not coconspirators. Rather, Womochil asserts that the Government failed to show by a preponderance of independent evidence that he was a member of the conspiracy, or that the statement was made during the course and in furtherance of the conspiracy.

■ The district court's determination as to the admissibility of coconspirator's statements under Fed.R.Evid. 801(d)(2)(E) will not be reversed unless it is clearly erroneous. *United States v. DeLuna,* 763 F.2d 897, 909 (8th Cir.1985) (quoting *United States v. Singer,* 732 F.2d 631, 636 (8th Cir.1984)). We are satisfied that the Government proved by a preponderance of the evidence that Womochil was a member of the conspiracy in question. Janet Meadows, a former girlfriend of Gilbert's, testified as to Womochil's frequent visits to Gilbert's house, during which Womochil and Gilbert would meet behind closed doors in Gilbert's bedroom, where Gilbert kept cocaine. Law enforcement agents testified that Womochil was observed on one occa-

sion at the dental laboratory that served as a locus of the drug transactions, and at a meeting at or near a drugstore with other coconspirators. Womochil's own statements recorded pursuant to the wiretaps, admissible under Fed.R.Evid. 801(d)(2)(A) as admissions of a party-opponent, also constitute independent evidence of his role in the conspiracy. Further, Russell Rockwell testified that he had delivered a paper sack containing something from Womochil to Bartrem (see Section III below). Also, Officer Griffith, on cross-examination by defense counsel, testified as to his theory of Womochil's role in the conspiracy.

■ As for the "in the course of" requirement, contrary to Womochil's assertion Lascala testified that his conversation with Bongiorno took place during the course of the conspiracy. As well, Bongiorno's statement to Lascala was made in furtherance of the conspiracy. "Statements of a coconspirator identifying a fellow coconspirator as his source of controlled substances is in furtherance of the conspiracy and therefore admissible." *United States v. Anderson,* 654 F.2d 1264, 1270 (8th Cir.), *cert. denied,* 454 U.S. 1127, 102 S.Ct. 978, 71 L.Ed.2d 115 (1981). *See also United States v. Fitts,* 635 F.2d 664, 666 (8th Cir.1980); *United States v. Carlson,* 547 F.2d 1346, 1362 (8th Cir.1976), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977). Finally, we disagree with Womochil's contention that because the statement as to Bartrem's source of cocaine was not made by Bartrem, but attributed to him by Bongiorno, it was inadmissible hearsay. *See, e.g., Carlson,* 547 F.2d at 1361–62 (court admitted, under Fed. R.Evid. 801(d)(2)(E), testimony of DEA Agent Nelson that another DEA agent told him that coconspirator Dahl stated that his source of cocaine was defendant Hofstad). In sum, we cannot say that the district court's decision to admit Lascala's testimony was improper.

The second point in the testimony which Womochil alleges involved impermissible hearsay occurred during redirect examination of Lascala by the Government:

Q: Mr. Gallup [Womochil's defense counsel] asked you on Cross Examination whether Ronald Bartrem had told you he had gotten his cocaine from Harry Gilbert; is that right?

A: Right.

Q: And what did Ronald Bartrem tell you?

THE COURT: Excuse me—

Mr. Gallup: I am going to object to that
* * * *

Transcript at 702–03. Womochil claims that on cross-examination of Lascala, Womochil's defense counsel questioned him solely about statements he had made to the FBI when they came to see him in the penitentiary. No inquiry was made on cross-examination, Womochil asserts, as to Lascala's conversations with Bartrem in the penitentiary. Thus, because defense counsel had not opened the door to permit evidence of conversations between Lascala and Bartrem, Womochil contends that the court erred in admitting the prosecutor's questions in regard to such conversations.

In admitting the testimony in question, the district court determined after a hearing out of the presence of the jury that the prosecutor's question about Lascala's conversations with Bartrem was necessary to correct a false impression left by defense counsel on cross-examination. Specifically, prior to cross-examining Lascala, defense counsel voir dired him out of the presence of the jury in regard to Defense Exhibit 401, a statement made by Lascala to the FBI. During this voir dire defense counsel elicited from Lascala a statement that Bartrem had told him while they were in Leavenworth that he had gotten cocaine from Womochil and then later from Gilbert. On cross-examination of Lascala in front of the jury, however, defense counsel repeatedly left the impression that Lascala had told the FBI that Gilbert alone had been Bartrem's cocaine source. The district court, therefore, allowed the prosecutor on redirect examination to correct this false impression by bringing out Lascala's complete statement as to Bartrem's source of cocaine.

The scope of redirect examination is within the sound discretion of the district court, *United States v. McDaniel*, 773 F.2d 242, 246 (8th Cir.1985); *United States v. Foley*, 683 F.2d 273, 276–77 (8th Cir.), *cert. denied*, 459 U.S. 1043, 103 S.Ct. 463, 74 L.Ed.2d 613 (1982), and we will reverse the district court only upon a showing of abuse of its discretion. *United States v. Taylor*, 599 F.2d 832, 839 (8th Cir.1979). We find no such abuse of the district court's discretion in its decision to allow the Government to clear up the false impression created on cross-examination as to Lascala's testimony. This court has repeatedly allowed the use of otherwise inadmissible evidence on redirect examination to clarify or complete an issue opened up by defense counsel on cross-examination. *See, e.g., United States v. Young*, 553 F.2d 1132, 1135 (8th Cir.), *cert. denied*, 431 U.S. 959, 97 S.Ct. 2686, 53 L.Ed.2d 278 (1977) (and cases cited therein).

### III. Alleged Prosecutorial Misconduct

We next address Womochil's argument that the district court erred in denying his many motions for mistrial based on the prosecutor's alleged misconduct. In support of his contention Womochil cites to specific incidents during the trial in which he asserts that the prosecutor employed "illegal tactics." The first such incident occurred on direct examination of Government witness Russell Rockwell. Rockwell had previously pleaded guilty to violating 21 U.S.C. § 843(b) (1984), by telephoning Womochil on November 8, 1982 and telling Womochil he had delivered cocaine to Bartrem. At trial Rockwell testified that he had delivered a package to Bartrem at Womochil's request. The questioning which Womochil finds objectionable was as follows:

Q: Do you remember ever telling anyone that it was cocaine that was in that sack that you were taking to Ronald Bartrem?

Mr. Gallup: I am going to object to that, your Honor, there is no proper and sufficient foundation and I object to that and I move for a mistrial.

. . . .

THE COURT: Yes, sustained on foundation.

. . . .

Q: Well, Mr. Rockwell, do you ever remember telling anyone that you had told Mr. Womochil on the phone that you had delivered cocaine to Ronald Bartrem?

Mr. Gallup: I am going to object to that * * * *

THE COURT: Overruled. He may answer if he can.

A. When I pleaded * * * *

Mr. Gallup: I object. That is not responsive and I move for a mistrial * * * *

Transcript at 908–09. After a conference at the bench out of the hearing of the jury the court held that insufficient foundation had been laid as to Rockwell's knowledge of what was in the package. The court sustained the objection to the question, directing the jury to disregard it, but overruled the motion for a mistrial. After this ruling by the court, the questioning continued:

Q: At the time that you carried the sack to Ronald Bartrem, did you have an opinion at that time as to what was in the sack?

Transcript at 913. Defense counsel's objection to this question was again sustained by the court.

The second instance of alleged prosecutorial misconduct occurred after Womochil's defense counsel had used Officer Griffith's affidavits, prepared in support of an application for a wiretap order, in cross-examining the police officer. The prosecutor then offered the affidavits, Defendant's Exhibit 404, into evidence; Womochil's objection was sustained. Womochil then moved for a mistrial based on the prosecutor's "continually offering inadmissible items." The court did not grant the motion.

Womochil next asserts that the prosecutor acted improperly during redirect examination of FBI Agent Murphy. On cross-examination of Murphy the following ex-

change took place between Womochil's defense counsel and Murphy:

Q: * * * And [Womochil] has never, to your knowledge, ever been arrested or accused of drug trafficking or drug violations of any type up until this particular case, isn't that true?

A: Do you mean by official process accused of it?

Q: Yes.

A: Not that I'm aware of.

Transcript at 126–27. Shortly thereafter, on redirect, the prosecutor questioned Agent Murphy as follows:

Q: Agent Murphy, you indicated that you never learned that prior to this case that Mr. Womochil had gone through the official process of being charged on another narcotics-related matter.

A: That's correct, yes.

Q: That's not to say that you hadn't received other information with respect to Wayne Womochil and previous dealings with narcotics?

Mr. Gallup: I am going to object to that, it's incompetent, immaterial and irrelevant and goes beyond the scope of the Cross Examination.

THE COURT: Overruled.

Q: And have you received other information?

A: Oh, yes. Yes, many times.

Q: What has been the nature of that information?

Mr. Gallup: The same objection, hearsay, incompetent, immaterial and irrelevant.

Transcript at 128. The prosecutor ultimately withdrew the last question, conceding that it called for hearsay. The record does not show, however, that Womochil moved for a mistrial in connection with Murphy's testimony.

As his final examples of prosecutorial misconduct Womochil points to certain questions asked by the prosecutor of Officer Griffith on redirect examination, the answers to which were referred to in the Government's closing argument. As stat-

ed above, on cross-examination of Griffith defense counsel used Exhibit 404, consisting of affidavits and applications for wiretap orders, to impeach him by showing he had made prior inconsistent statements in the exhibit. The Government contends that the net result of this attack on Griffith's testimony was to leave the jury with the impression that the exhibit contained the latest and best information, and that Griffith's opinions brought out on cross-examination were unreliable insofar as they contradicted the exhibit. The court permitted the prosecutor on redirect, over Womochil's objection, to ask Griffith whether various individuals who had been subjects of the narcotics investigation had been interviewed since the affidavits were written. The court subsequently overruled Womochil's motion for a mistrial based on this questioning of Griffith. Later, in his summation of the evidence, the prosecutor referred to Griffith's testimony that further investigation, including interviews with Bartrem and Cenon Ortiz, was conducted after the affidavits and wiretap applications were made. Womochil's objection and mistrial motion were overruled, although the court cautioned the jury to "decide the case upon the evidence that is before you and not what in Final Argument counsel have said the evidence might be." Womochil contends that the Government's closing argument allowed the jury to infer that Bartrem and Ortiz had implicated him in their interviews.

At the outset we note that the district court has broad discretion in determining whether a defendant has been so prejudiced as to require a mistrial. *United States v. Robinson*, 774 F.2d 261 at 277 (8th Cir.1985); *United States v. Panas*, 738 F.2d 278, 285 (8th Cir.1984). We conclude that the instances of alleged prosecutorial misconduct cited by Womochil neither individually nor collectively rise to the requisite level of prejudice to warrant a mistrial. The question directed to Rockwell as to statements he had made concerning the contents of the package delivered was never answered. We cannot say that the mere asking of an improper question prejudiced

Womochil's case. *See Robinson*, at 277; *United States v. Givens*, 712 F.2d 1298, 1301 (8th Cir.1983), *cert. denied*, 465 U.S. 1009, 104 S.Ct. 1005, 79 L.Ed.2d 237 (1984). Likewise, Womochil's contention that the Government's proffer of Defendant's Exhibit 404 into evidence prejudiced his case is without merit. Finally, the Government's lines of questioning of Agent Murphy and Officer Griffith on redirect examination were necessary to correct false inferences left by defense counsel after cross-examination of these witnesses. In Agent Murphy's case, defense counsel opened the door to questions about whether the agent had ever received information as to Womochil's involvement with narcotics by creating the false impression on cross-examination that Womochil had never come under suspicion with respect to drugs. As to Officer Griffith's testimony, the questioning as to investigations conducted subsequent to his writing the affidavits in support of the wiretap applications helped correct the inference left on cross-examination that those affidavits contained the most current and correct information available. As we discussed above in Section II, when defense counsel leaves a false impression after cross-examining a witness, the court may allow the use of otherwise inadmissible evidence on redirect to clarify the issue. *Young*, 553 F.2d at 1135. Because the questioning of Officer Griffith was not in error, the prosecutor's reference to the officer's testimony in his summation was likewise permissible. The trial court has broad discretion in controlling the substance of closing arguments. *United States v. Lewis*, 759 F.2d 1316, 1350 (8th Cir.1985); *United States v. Nabors*, 761 F.2d 465, 470 (8th Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 148, 88 L.Ed.2d 123 (1985). The district court's caution to the jury to decide the case based on the evidence and not on the final argument cured any potential error. *See Llach*, 739 F.2d 1322 at 1330 (8th Cir.1984); *United States v. Schwartz*, 655 F.2d 140, 142 (8th Cir.1981). In sum, the district court

**1318**

did not abuse its discretion in denying Womochil's motions for mistrial.

## IV. Conclusion

This court by previous order has denied Womochil's request for a second opportunity to present oral argument, due to the failure of his attorney, Alan P. Caplan, to appear on the date originally scheduled. In rendering this opinion we have given full consideration to the arguments presented in Womochil's brief to this court. Finding none of those arguments to be of merit, however, we affirm his conviction.