## DEPARTMENT OF HUMAN SERVICES

v.

### Peter THIBEAULT.

Supreme Judicial Court of Maine.

Submitted on Briefs June 14, 1989.

Decided July 6, 1989.

Brian Swales, Houlton, Deanna L. Staples, Asst. Atty. Gen., Dept. of Human Services, Bangor, for plaintiff.

William J. Smith, Van Buren, for defendant.

Before McKUSICK, C.J., and WATHEN, GLASSMAN, CLIFFORD, HORNBY, and COLLINS, JJ.

McKUSICK, Chief Justice.

The Department of Human Services appeals the judgment of the Superior Court (Aroostook County, *Pierson, J.*) entered after a jury returned a special verdict, by a six-to-two vote, that the Department had failed to prove by a preponderance of the evidence that defendant Peter Thibeault is the father of Lisa Dufour's daughter Alicia. Because we agree with the Department that the presiding justice should have allowed it to present redirect testimony by its expert witness on paternity blood testing, we vacate the judgment.

The Department instituted this paternity action against defendant in 1985 seeking to establish that he is the father of Alicia Dufour, born to Lisa Dufour on October 31, 1981. At the trial in December 1987, the testimony showed that the mother and defendant had sexual intercourse during the month of January 1981, on January 31st by the mother's testimony and in early January by defendant's. The mother admitted that she had intercourse with another man in mid-December 1980, but asserted that she had her regular menstrual period in January 1981. She also testified that she had no sexual relations again during the month and a half following her affair with defendant. When she applied for AFDC in 1982, the mother filled out two department forms, one naming defendant as Alicia's father and the second naming the other man. At trial, she explained that although she knew at the time that defendant was the father, the other man had called her insisting that he was the father.

After defendant and the mother had testified, the Department called Clifton Harris, Ph.D., an associate director of the Department of Paternity Evaluation at Roche Biomedical Laboratories, Inc. Testifying as an expert in genetic blood testing, Dr. Harris gave his evaluation of the reported results of various blood tests performed at

Roche on blood samples from the child, the mother, and defendant.[1] He concluded that defendant is 7,541 times more likely than a randomly selected North American Caucasian male to be the biological father of Alicia and that the probability of defendant's paternity is 99.98%. On cross-examination, defense counsel asked Dr. Harris to demonstrate the calculation he would use for one of the tests. The figure Dr. Harris came up with was about half that given in the report from Roche. Dr. Harris could not then explain the discrepancy. After Dr. Harris answered a few more cross-examination questions, both counsel stated that they had no further questions of Dr. Harris and the trial was recessed for the night. The Department had not rested its case.

First thing the next morning, at a conference in chambers, the Department asked to continue Dr. Harris on the stand so that he could offer on redirect his explanation for the apparent discrepancy first brought out on cross-examination. He proposed to testify that his calculation on the stand was substantially correct and that the discrepancy resulted, he believed, from a transpositional error in the Roche report and from his use of gene frequency tables of a different year than those used at the laboratory. The presiding justice denied the Department's request, stating that the Department had had the Roche report since 1984 and could have discovered any errors earlier. In his closing argument, defense counsel put particular emphasis on the discrepancy for the purpose of discrediting Dr. Harris's expert opinion evaluating the blood tests. The jury then found for defendant.

It is true that the decision whether to allow recall of a witness rests within the sound discretion of the trial judge. *See State v. Kingsbury,* 399 A.2d 873, 875 (Me. 1979). In exercising control over the mode and order of interrogation, however, the presiding justice should keep in mind the overall objectives of a trial to ascertain the truth, avoid needless consumption of time, and protect witnesses from harassment. M.R.Evid. 611(a). *See* Field & Murray, *Maine Evidence* § 611.1, at 233 (2d ed. 1987). Despite the deference we ordinarily accord the trial judge's decision in these matters, we conclude that in the specific circumstances of this case the judge erred in not allowing any redirect testimony by Dr. Harris and that the error cannot be disregarded as harmless.

█ There are several factors a trial judge should consider in determining whether a party should be permitted to introduce further testimony at trial. A trial judge should allow a party even to reopen its case after it has rested if doing so is required to avoid an unfair result. *See New England Hotel Realty, Inc. v. Finley,* 508 A.2d 121, 122 (Me.1986). We have upheld a trial judge's decision to allow further evidence even after closing arguments had begun when the evidence was "omitted by inadvertence or because of a previous lack of knowledge by counsel." *Benner v. Benner,* 120 Me. 468, 470, 115 A. 202, 203 (1921). In a decision of the Pennsylvania Supreme Court concluding that the trial judge abused his discretion in refusing to allow reopening, the court found persuasive that the evidence was inadvertently omitted, that it was necessary to an accurate adjudication, that reopening would "serve an honest purpose by giving the court a more complete picture," and that reopening would not create any unfair disadvantage. *In re J.E.F.,* 487 Pa. 455, 459–60, 409 A.2d 1165, 1166–67 (1979).

█ In this case the Department was not asking to reopen the case, but was asking only for an opportunity to question Dr. Harris on redirect about a matter that had first been raised during cross-examination. At the time the Department requested the opportunity for redirect, Dr. Harris had not been finally excused and the Department had not yet rested its case. Nor had any other witnesses intervened. The Department proposed merely that Dr. Harris

---

1. Because the Department did not send the blood samples to the laboratory defendant had agreed to for performance of the tests, the court ruled that the Department was not entitled to the presumption of paternity contained in 19 M.R.S.A. § 280(1)(D) (Supp.1988).

should continue his testimony, going on directly from where the case stood when recessed the afternoon before. Permitting Dr. Harris to give testimony on redirect the morning after defense counsel finished his cross-examination would not have disturbed the order of witnesses or in any way prejudiced defendant unfairly. On redirect Dr. Harris could have quickly given his explanation for a discrepancy that came to light only during his cross-examination. *See United States v. Womochil,* 778 F.2d 1311, 1315 (8th Cir.1985) ("This court has repeatedly allowed the use of otherwise inadmissible evidence on redirect examination to clarify or complete an issue opened up by defense counsel on cross-examination"). It would then have been the function of the jury to assess Dr. Harris's credibility in light of all the evidence. As it was, the jury was left with less than a full development of the subject opened up by defense counsel's request for Dr. Harris to make an extemporaneous calculation on the stand. There is no sign that the failure to note the problem in the report from the Roche laboratory was the result of any intentional or reckless disregard on the part of either the Department or Dr. Harris. The truth-seeking purpose of the trial would have been better served by letting the Department's key witness explain the previously unsuspected discrepancy.

■ Dr. Harris's testimony evaluating the blood tests of the mother, child, and alleged father was obviously of vital importance in this paternity case. We cannot say that the court's refusal to allow Dr. Harris to testify on redirect was harmless error. An appellate court will disregard a preserved error at trial on the ground it was harmless only when the court finds it "highly probable that the error did not affect the judgment." *State v. True,* 438 A.2d 460, 467 (Me.1981) (quoting R. Traynor, *The Riddle of Harmless Error* 35, 49–51 (1970)). It is true that Dr. Harris's explanation of the discrepancy, involving as it did only his belief as to what others at the Roche laboratory had mistakenly done, might not have rehabilitated him in the eyes of the jury. Nonetheless, blood tests, whose reliability in paternity cases is now

well accepted, *see, e.g., Little v. Streater,* 452 U.S. 1, 6–8, 101 S.Ct. 2202, 2205–07, 68 L.Ed.2d 627 (1981); *State v. Thompson,* 503 A.2d 689, 692 (Me.1986), are particularly important in these cases where, as now Supreme Court Justice Brennan once noted, "the truth is so often obscured because social pressures create a conspiracy of silence or, worse, induce deliberate falsity." *Cortese v. Cortese,* 10 N.J.Super. 152, 156, 76 A.2d 717, 719 (1950). We are not satisfied to the requisite probability that the jury would have reached the same result had Dr. Harris been given an opportunity to explain the discrepancy on redirect.

By no means do we adopt any *per se* rule that refusal to allow recall of a witness for redirect soon after completion of cross-examination will always be an abuse of discretion. Rather, we hold that in all the circumstances of this case the evident need to protect the integrity of the truth-seeking process, when taken with the complete absence of any unfair disadvantage to the opposing party, required that Dr. Harris be given a chance on redirect to answer fully the questions raised by the calculation he was asked to make under cross-examination.

Judgment vacated. Remanded for further proceedings consistent with the opinion herein.

All concurring.