**Supreme Court**

No. 2013-245-C.A.

(P1/10-3274A)

State                       :

v.                           :

Anibal Acevedo.             :

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

|  |  |
|---|---|
| State | : |
| v. | : |
| Anibal Acevedo. | : |

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Flaherty, for the Court.**  A jury convicted the defendant, Anibal Acevedo, of multiple counts of child molestation, and he appealed to this Court.  During the redirect-examination testimony of the complaining witness, who is a niece of the defendant's girlfriend, the trial justice allowed some nonspecific testimony about previous, uncharged acts of sexual misconduct.  Before this Court, Acevedo argues that the trial justice erred when she allowed the admission of the testimony about prior bad acts.  For the reasons set forth in this opinion, we affirm the judgment of conviction.

## Facts and Travel

The complaining witness, Jennifer,[1] said that she first met defendant when she was approximately ten years old. Jennifer's aunt and Acevedo lived together in Woonsocket with their only child; they would eventually have three children. According to her trial testimony, Jennifer and her siblings considered Acevedo to be their uncle. Jennifer would see defendant regularly when her extended family gathered, such as for birthdays and other holidays.

At trial, Jennifer testified about an incident that occurred when she was in the sixth grade. Jennifer was feeling ill and had been excused from school. The defendant picked her up because Jennifer's mother was working and unable to do so. Jennifer testified that defendant brought her to the house that he shared with Jennifer's aunt.

According to Jennifer, she retreated to her cousin's bedroom when she and defendant arrived at his empty house. The defendant eventually brought some Vicks ointment, ostensibly to help with her illness. However, Jennifer testified that defendant rubbed the ointment on her back as well as her breasts. She said that as he rubbed her chest, defendant "caress[ed]" her breasts under her bra and that he began rubbing her vagina outside of her clothes.

Jennifer also told the jury that defendant then laid her down on the floor and positioned himself on top of her. She testified that defendant unbuckled her pants and penetrated her vagina with his penis. Jennifer described how she screamed because of the pain, and she said that after it was over there was "blood everywhere," so defendant gave her a towel to clean up. Jennifer

---

[1] We use a fictitious name to protect the identity of the complaining witness.

and defendant did not speak again that day, and when Jennifer's mother retrieved her from defendant's home, Jennifer did not reveal what had happened.

Jennifer also testified about another episode that occurred during the summer when she was between the sixth and seventh grades. Jennifer said that because defendant did not speak English, he would sometimes ask her to act as a translator for him. On one such occasion, Jennifer recollected, she was asked to accompany defendant to translate for him; it was her understanding at the time that they were going to an auto-parts store. Rather than going to the store, however, defendant drove Jennifer to a back road that did not have much traffic.

After parking and alighting from the car, defendant re-entered the vehicle through the passenger door and sat on the passenger seat with Jennifer. Jennifer testified that defendant then positioned himself behind her and touched her breasts and vagina. The defendant removed Jennifer's pants and underwear and penetrated her vagina with his penis. She explained to the jury that, as after the first occurrence, she did not say anything at that time about what had occurred.

At trial, Jennifer also recalled for the jury that her behavior during her early teenage years became more and more problematic. Eventually, when she was sixteen or seventeen years old, she confided to a counselor about the incidents involving defendant. At that time, Jennifer also notified her mother about what she had experienced at the hands of defendant. Finally, when Jennifer was eighteen years old, she went to the police and reported the alleged abuse.

As a result of Jennifer's complaint, Acevedo was charged with ten crimes: five counts of first-degree child molestation and five counts of second-degree child molestation. One count was dismissed before trial pursuant to Rule 48(a) of the Superior Court Rules of Criminal Procedure. The remaining counts were reached for trial before a jury in February 2013.

During Jennifer's testimony, she was questioned about her statement to police. Jennifer confirmed during cross-examination that in the only statement she made to the police about defendant's actions, she said that similar incidents "happened almost every other day" except on the weekends, when the rest of her family was around.[2]  In response to cross-examination by defendant's counsel, she conceded that the events had not actually happened every other day and, with respect to the number of occasions on which she claimed to have been assaulted, that she knew that the statement was inaccurate when she provided it to police. Jennifer explained, however, that it felt to her as though it happened every other day because she would see defendant that often; each time she saw him, her emotions would rise. Those feelings and those emotions, she said, were the basis of her statement.

After cross-examination, the attorneys and the trial justice conferred at sidebar. The prosecutor expressed his desire to ask Jennifer whether there had been other similar acts besides the two that she described in detail. During that discussion, the prosecutor said that the testimony he wished to introduce would be admissible under Rule 404(b) of the Rhode Island Rules of Evidence.[3]  After she took a recess, the trial justice again addressed counsel at sidebar and explained that she would permit the testimony "so that the jury can get a full picture. This will be allowed to show the defendant's common scheme and plan with respect to this victim, and it is relevant also to show his attitude regarding sexual activity toward the victim." The trial

---

[2] Jennifer had given similar testimony to the grand jury.
[3] Rule 404(b) of the Rhode Island Rules of Evidence provides as follows:

> "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to prove that defendant feared imminent bodily harm and that the fear was reasonable."

justice also said that she would limit the prosecution to rehabilitating the witness regarding her statement to police. She noted, however, that she was not going to permit the state to reopen its case-in-chief by eliciting testimony about events about which Jennifer had not been able to testify in detail. In an attempt to circumscribe the extent of the redirect examination, the trial justice queried the prosecutor about the questions he would ask, and the prosecutor confirmed that he had no intention of getting into the specifics of the other incidents. Acevedo's attorney objected, arguing that such evidence would be inadmissible as propensity evidence.

On redirect examination, the prosecutor inquired of Jennifer whether there had been other times that defendant had touched her; she replied that it had happened other times during the same time period. However, she did not testify about the details of any other occasions. Indeed, the redirect examination was very brief:

> "[Prosecutor]: Were those the only two incidents, the two incidents you testified about, were those the only two times that Anibal Acevedo touched you?
> "[Jennifer]: Yes, I'm only talking about the ones that I do remember, yes.
> "[Prosecutor]: Okay. Were there other times?
> "[Defense counsel]: Objection. She's asked—answered that question.
> "The Court: Overruled.
> "[Prosecutor]: Were there other incidents, though?
> "[Jennifer]: Yes.
> "[Prosecutor]: And did those times occur during that time frame that you discussed?
> "[Jennifer]: Yes.
> "[Prosecutor]: Middle school time frame?
> "[Jennifer]: Yes.
> "[Prosecutor]: It's fair to say you don't know—were you keeping count during that time?
> "[Jennifer]: No, that's why it's hard for me to remember.
> "[Prosecutor]: Were you marking on a calendar when they occurred?

"[Jennifer]:  No."[4]

At the conclusion of the state's case-in-chief, the parties agreed that there was insufficient evidence on several of the remaining nine counts, and the trial justice granted a motion for judgment of acquittal on counts 2, 5, 8, and 9.  Eventually, the jury convicted defendant on the five remaining counts that had been submitted to it:  two counts of first-degree child molestation and three counts of second-degree child molestation.

On the counts of first-degree child molestation, the trial justice sentenced Acevedo to thirty years imprisonment, with twenty years to serve and the remainder suspended.  On the counts of second-degree child molestation, the trial justice sentenced defendant to twenty-five years, with fifteen years to serve and the remainder suspended.  The trial justice ordered that the sentences were to be served concurrently.  Before this Court, defendant challenges only the ruling of the trial justice allowing the prosecution to rehabilitate the complaining witness by permitting questions about the inaccuracies in her police statement regarding the frequency of the incidents of molestation.

## II

## Standard of Review

"[T]he admissibility of evidence is a decision within the sound discretion of the trial justice * * * ."  State v. Dubois, 36 A.3d 191, 199 (R.I. 2012) (citing State v. Merida, 960 A.2d 228, 237 (R.I. 2008)).  Thus, the trial justice's decision will be affirmed unless he or she has abused that discretion.  Id.

---

[4] After that exchange, the trial justice imparted a limiting instruction to the jury, explaining that the evidence was admissible to show a design or plan.  Defense counsel again objected, pointing out that there was nothing in the record that would support a theory that these incidents had been part of a design or common plan.

## Discussion

Generally, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." Rule 404(b). We have clung to this principle in the context of molestation or sexual-assault cases, saying that "evidence of a defendant's prior sexual misconduct cannot be admitted to prove that 'defendant is a bad man, and that he has a propensity toward sexual offenses and, therefore, probably committed the offense with which he is charged.'" State v. Mohapatra, 880 A.2d 802, 806 (R.I. 2005) (quoting State v. Quattrocchi, 681 A.2d 879, 886 (R.I. 1996)).

Evidence of other bad acts may be admissible, however, to prove something other than a defendant's propensity. See Mohapatra, 880 A.2d at 806. Although this Court has not yet addressed the precise issues raised in this appeal, other courts have determined that the permissible purposes for the introduction of such evidence may include the rehabilitation of a witness. See, e.g., United States v. Bell, 624 F.3d 803, 810-11 (7th Cir. 2010); United States v. Span, 188 F. App'x 487, 491 (7th Cir. 2006); United States v. Holly, 167 F.3d 393, 395 (7th Cir. 1999); Hall v. State, 666 S.W.2d 408, 409 (Ark. Ct. App. 1984). In Bell, 624 F.3d at 810, a defendant on trial for a drug offense argued that rebuttal testimony that the defendant previously had asked the witness to cook five kilograms of crack cocaine was inadmissible prior-bad-act evidence. The Seventh Circuit Court of Appeals disagreed, holding that the purpose of the evidence was not to show the defendant's propensity to act in conformity with the prior acts, but rather to assail the defendant's version of events. Id. at 810-11. In Holly, 167 F.3d at 395, the Seventh Circuit similarly allowed the government, in a mail-fraud prosecution, to question witnesses about intimidation by the defendant, which, it was argued, produced the witnesses'

earlier statements that the defendant had not been involved in the crime. The fact that the defendant intended to use the prior statements on cross-examination led the court to allow the prosecution to introduce the evidence of uncharged prior bad acts. Id.

Courts, moreover, have relied on the nature of redirect examination to allow the admission of a broader range of evidence than might have been admissible on direct examination. In United States v. Womochil, 778 F.2d 1311, 1315 (8th Cir. 1985), for example, the Eighth Circuit affirmed the admission of hearsay testimony "to clear up the false impression created on cross-examination." The court explained that it had "repeatedly allowed the use of otherwise inadmissible evidence on redirect examination to clarify or complete an issue opened up by defense counsel on cross-examination." Id. (citing United States v. Young, 553 F.2d 1132, 1135 (8th Cir.), cert. denied, 431 U.S. 959 (1977)). In United States v. Martinez, 775 F.2d 31, 37 (2d Cir. 1985), evidence was properly allowed on redirect examination even though the court accepted that the same evidence might have been inadmissible if it had been offered during direct examination. This is because "[e]vidence whose probative value might not be thought to outweigh its prejudicial effect if offered on direct examination may well be admitted during redirect examination 'for the purpose of rebutting the false impression which resulted from * * * cross examination.'" Id. (quoting United States v. Finkelstein, 526 F.2d 517, 527 (2d Cir. 1975), cert. denied, 425 U.S. 960 (1976)).

The challenged testimony in this case was offered to rebut an impression that may have arisen during defendant's cross-examination of Jennifer about the veracity of her statement to the police that defendant molested her "almost every other day." Because of the purpose for which the evidence was offered and the regulated and limited manner in which the testimony was elicited, we cannot say that the trial justice abused her discretion. The evidence was not offered

to show defendant's propensity to commit such acts. Rather, the state offered the testimony to correct any impression that might have been left on the jury that Jennifer had distorted the two incidents described during her direct examination when she told the police that defendant did this "every other day." See Holly, 167 F.3d at 395; see also State v. Oliveira, 882 A.2d 1097, 1127 (R.I. 2005) (allowing redirect-examination testimony offered "to correct the misleading impression created by [defense counsel's] questioning of [a detective]"); cf. United States v. Cerno, 529 F.3d 926, 936 (10th Cir. 2008) ("Included among the other proper purposes for the admission of prior act evidence is impeachment." citing United States v. Olivo, 69 F.3d 1057, 1065 (10th Cir. 1995)).

When she exercised her discretion as to the allowable extent of redirect examination, the trial justice was careful to limit the introduction of evidence of other bad acts. The record is clear that, after discussing the scope of redirect with both attorneys, the trial justice advised the prosecutor that he would not be allowed to stray from rehabilitating Jennifer's credibility into testimony about occurrences that she had already admitted she did not remember in detail. The trial justice additionally forbade the state to get into the details of the other incidents during the redirect examination. Finally, the trial justice gave a limiting instruction in which she told the jury that defendant had not been charged for the acts mentioned on redirect and that they were not offered to prove that a crime had been committed.

The trial justice concluded that Jennifer had made an inconsistent statement, and, in allowing the state to educe testimony to rehabilitate the witness, she permitted the witness to testify about other nonspecific evidence of prior bad acts. That decision, in our opinion, was not an abuse of the trial justice's broad discretion.

## IV

## Conclusion

For the foregoing reasons, we affirm the judgment of conviction. The papers shall be remanded to the Superior Court.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**        State v. Anibal Acevedo.

**CASE NO:**        No. 2013-245-C.A.
                    (P1/10-3274A)

**COURT:**        Supreme Court

**DATE OPINION FILED:**  June 13, 2014

**JUSTICES:**        Suttell, C.J., Goldberg, Flaherty**,** Robinson, and Indeglia, JJ.

**WRITTEN BY:**        Associate Justice Francis X. Flaherty

**SOURCE OF APPEAL:**    Providence County Superior Court

**JUDGE FROM LOWER COURT**:

                    Associate Justice Sarah Taft-Carter

**ATTORNEYS ON APPEAL:**

                    For State:  Virginia M. McGinn
                                Department of Attorney General

                    For Defendant:  Janice M. Weisfeld
                                    Office of the Public Defender