940 F.2d 1539
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Dorothy Mae DOWLER, Defendant-Appellant.
 No. 90-5094.
 United States Court of Appeals, Tenth Circuit.
 Aug. 14, 1991.
 
 Before McKAY, SETH and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 SETH, Circuit Judge.
 
 
 1
 Appellant Dorothy Mae Dowler was charged and convicted of one count of conspiracy to defraud in violation of 18 U.S.C. Sec. 371 and seven counts of causing interstate travel in furtherance of fraud in violation of 18 U.S.C. Sec. 2314. She seeks reversal of her conviction asserting that the trial court erroneously denied her motion to suppress evidence obtained in violation of her Fourth Amendment rights.
 
 
 2
 On October 29, 1986, appellant rented an apartment at the Oakwood Garden Apartments on a month to month basis. She planned to utilize the space as living accommodations and as office space. On November 1, 1986, she moved her personal belongings and business records into the apartment. The business records were contained in eight boxes, a file cabinet and two leather briefcases. She stayed in the apartment during the entire month of November. In early December 1986, she went to Switzerland. Before leaving, she made arrangements with her employee, Bob Lucas, and the Barclay Bank in Costa Mesa to pay her rent and utilities. Appellant returned on December 11, 1986, and spent the night in her apartment. This was the only evening that she stayed in her apartment during the month of December. The following morning she left the apartment, and eventually went to San Francisco. She had no contact with the apartment manager until February 26, 1987.
 
 
 3
 Meanwhile, the apartment manager had not received payment on the December rent. He contacted Mr. Lucas whose name appeared on her rent application. Mr. Lucas was uncertain when appellant would return and suggested that the apartment manager place her property in storage. On December 30, 1986, while he was removing appellant's property from her apartment, he noticed that some of the material appeared to be valuable because it looked like stocks and bonds. He then placed her property in the locked apartment building storage area until appellant could collect it.
 
 
 4
 In early January 1987, Detective Pace, of the Costa Mesa Police Department (not the local department), contacted the apartment manager and asked him if he knew the whereabouts of appellant because she was the subject of an investigation by the Federal Bureau of Investigation in Oklahoma. The apartment manager informed him that she had lived there; that the rent had not been paid; and that he had been instructed to put her property in storage.
 
 
 5
 Although the apartment manager made no search of the boxes and files, he testified that the documents and other personal property, the obvious ones, did not appear to be related to criminal activity, but he was concerned about the safety of the storage area. Therefore, he called his friend, Detective Parmentier of the Newport Beach Police Department (the local department), to pick up the property on February 26, 1987. During this telephone conversation, he also informed Detective Parmentier that Detective Pace had tried to contact appellant. After his conversation with the apartment manager, Detective Parmentier called Detective Pace. Detective Pace stated that appellant was the subject of a fraud investigation and the documents might have some evidentiary value. That same morning Detective Parmentier and another officer arrived at the Oakwood Garden Apartments and picked up appellant's property. Detective Parmentier testified that he did not perform a search of the property when it was in the storage area or at the police station. He merely took some photographs of the property in the storage area and put covers on a few of the boxes which were uncovered. He then seized the property which consisted of one file cabinet, eight boxes of miscellaneous papers and files and two leather briefcases, and took it to the local police station. Thus, he took possession apparently on the suggestion of the apartment manager, and after the conversation with Detective Pace, but with no actual knowledge of the contents.
 
 
 6
 On that same day appellant learned that her rent was delinquent. She went to the Oakwood Garden Apartments to pay the December rent and to collect her property. After learning that the items had been turned over to the police, she went to the police station and requested Detective Parmentier to release the items to her. He refused to do so because he believed that the property was evidence in a case that the FBI was investigating. On January 26, 1988, the files were transported to the FBI in Los Angeles. Thereafter, the property was searched and the documents were examined without a warrant and without the consent of appellant.
 
 
 7
 Prior to trial, appellant moved to suppress all the evidence obtained from the search of the boxes and files. The trial court denied this motion finding that appellant had abandoned her apartment; therefore, she did not have a reasonable expectation of privacy in the items seized. Apparently, the trial court only considered appellant's relationship to the apartment, and did not consider her expectation of privacy as to the property in the location where it was seized and searched nor the fact that it was in containers.
 
 
 8
 On February 26, 1990, the case proceeded to trial. The jury found appellant guilty on all eight counts. Appellant appeals the denial of her motion to suppress alleging that the warrantless and non-consensual search and seizure violated her rights under the Fourth Amendment.
 
 
 9
 It is apparent that a person does not have standing to complain of a Fourth Amendment violation where he or she has voluntarily abandoned property. Abel v. United States, 362 U.S. 217, 240-241. In United States v. Jones, 707 F.2d 1169, 1172 (10th Cir.), we held:
 
 
 10
 "The test for abandonment is whether an individual has retained any reasonable expectation of privacy in the object, [United States v.] Diggs, 649 F.2d at 735 [9th Cir. (1981) ]. This determination is to be made by objective standards. United States v. Kendall, 655 F.2d 199, 201 (9th Cir.1981), cert. denied, 455 U.S. 941, 102 S.Ct. 1434, 71 L.Ed.2d 652 (1982). An expectation of privacy is a question of intent, which 'may be inferred from words spoken, acts done, and other objective facts.' Kendall, 655 F.2d at 202 (quoting [United States v.] Williams, 569 F.2d at 826 [5th Cir. (1978) ]. 'A finding of abandonment is reviewed under the clearly erroneous standard.' Diggs, 649 F.2d at 735."
 
 
 11
 The trial court, as mentioned, concluded that appellant had abandoned the apartment. However, the abandonment of the apartment was not an issue in the Fourth Amendment consideration. There was no search of appellant's apartment nor seizure of any property from it. The determination of admissibility and the motion to suppress on that basis was clearly erroneous.
 
 
 12
 Upon the request of Mr. Lucas, as mentioned, the apartment manager agreed to store appellant's property until she could return to collect it and so removed the property from the apartment for that purpose. Although appellant did not directly deliver possession of her property to the apartment manager, the bailment was created through Mr. Lucas, her agent. As such, the apartment manager was obligated to care for her property in the regular storage area and a new relationship was created. The property was not abandoned. There was nothing to indicate that appellant could not pick up her property when she wished to do so, or have access to it when she wished. No lien was asserted. In fact, the apartment manager testified that upon demand he would have returned the property to her even if she did not pay the past due rent. She did return to collect her property.
 
 
 13
 In addition to the doctrines arising from the bailment created by her agent, and the privacy expectations created thereby, the property seized was in closed containers.
 
 
 14
 An individual does not have standing to challenge a search and seizure unless that "individual's subjective expectation of privacy is 'one that society is prepared to recognize as "reasonable." ' " Smith v. Maryland, 442 U.S. 735, 740 (quoting Katz v. United States, 389 U.S. 347, 361). By placing personal property inside a closed container, one "manifest[s] an expectation that the contents would remain free from public examination." United States v. Chadwick, 433 U.S. 1, 11. In United States v. Jacobsen, 466 U.S. 109, 120, n. 17, the Supreme Court held that "[a] container which can support a reasonable expectation of privacy may not be searched, even on probable cause without a warrant." See Arkansas v. Sanders, 442 U.S. 753. As long as a package is "closed against inspection," the Fourth Amendment protects its contents "wherever they may be" and the police must obtain a search warrant. Ex parte Jackson, 96 U.S. 727, 733. "[U]nless the container is such that its contents may be said to be in plain view, those contents are fully protected by the Fourth Amendment." Robbins v. California, 453 U.S. 420, 427. Further, there can be no distinction between "the relative 'privacy interests' in a closed suitcase, briefcase, portfolio, duffelbag, or box." Id.
 
 
 15
 At the time of the seizure from the storage area and the much later search by the FBI, the documents were contained in covered boxes, briefcases, and a file cabinet. The contents were "closed against inspection" and were not in "plain view." The contents were unknown to those handling the containers. By placing the documents in the boxes, file cabinet and briefcases, appellant manifested an expectation that the documents would remain private and free from inspection. Appellant's expectation of privacy and protection from a wrongful search and seizure continued into the creation of the bailment by the apartment manager and her agent, Mr. Lucas. See Jacobsen, 466 U.S. at 109 (where package is entrusted to a private carrier, a search warrant is required to examine its contents). See also United States v. Van Leeuwen, 397 U.S. 249 (search warrant required to examine the contents of two packages entrusted with the postal service). Possession of property by the police does not authorize a warrantless search absent a recognized exception. Jacobsen, 466 U.S. 109. No such exception is articulated here. The mere fact that Detective Parmentier put covers on some of the boxes before he seized them does not warrant a different conclusion as addressed below.
 
 
 16
 The government cannot argue that the search was based upon a good faith belief that the property was abandoned or upon the consent of the apartment manager. As indicated above, the apartment manager was entrusted to safekeep appellant's property. He could not consent to the search of its contents. Any suggestion was nullified when appellant tried to reclaim her property at the police station on the same day that it had been seized. As noted, upon learning that the property had been seized, appellant requested that Detective Parmentier return her property. The officer obviously knew at this time appellant's claim and that the apartment manager was storing the property for her. Her claim negated any suggestion of abandonment. The officer knew the chain of events and the property was so burdened when it passed to the FBI. At the time of the search by the FBI, the authorities were thus aware of appellant's intent to retain a reasonable expectation of privacy in the contents of those boxes and a search warrant was required for the examination of the contents.
 
 
 17
 The government urges that the FBI's search was lawful because its search did not exceed the scope of the private search performed by the apartment manager. A private search or seizure does not invoke the protections of the Fourth Amendment. Jacobsen, 466 U.S. 109. A private person's discovery of contraband and his subsequent notification of the authorities as to the existence of such contraband does not violate the Fourth Amendment. Illinois v. Andreas, 463 U.S. 765. In Jacobsen, 466 U.S. 109, defendant's privacy expectations were lost where Federal Express employees, upon noticing a white powder exuding from a damaged package, opened it up and notified the DEA. See also United States v. Walsh, 791 F.2d 811 (10th Cir.) (privacy interest in a briefcase was lost where airline employee opened it up to determine its owner, discovered a firearm, and then contacted the authorities).
 
 
 18
 Here, the action by the apartment manager did not constitute a private search. It was no search at all. The apartment manager did not search the contents of the boxes, briefcases, or file cabinet. Although he thought that some of the documents were stocks and bonds, this viewing did not frustrate appellant's expectation of privacy. Any illegal nature of the contents, if this was the case, was of course not apparent. When the apartment manager finally contacted the authorities almost two months later, he indicated that he was concerned about the security of the storage area. He did not notify the authorities because he had reviewed the documents and believed that they were associated with criminal activity. The apartment manager's actions did not constitute a private search; therefore, the FBI's search was a significant departure from the apartment manager's actions and not based thereon.
 
 
 19
 Further, Detective Parmentier did not conduct a search of appellant's property. In fact, he took pains not to do so. He testified that he did not want to disturb the evidence before the FBI could review it; therefore, he took some photographs, covered some of the uncovered boxes, and seized the property from the storage area. He could not have known the significance of the documents had he looked at them because he was not involved in the investigation. The only reason that the apartment manager contacted Detective Parmentier was because they are friends. Although Detective Pace indicated to Detective Parmentier that the documents might have some evidentiary value, he was not involved in the actual investigation either. Appellant did not lose any expectation of privacy in her property because Detective Parmentier knew that the property contained documents. The non-consensual and warrantless search approximately 15 months after the seizure does not fall within any of the recognized exceptions to the warrant requirement; therefore, the search was unlawful. Schneckloth v. Bustamonte, 412 U.S. 218, 219.
 
 
 20
 Appellant contends that the government's unlawful search of her business records resulted in her conviction because it was permitted to introduce documents at trial obtained through the unlawful search. But in addition, and perhaps more importantly, she urges that the foundation for the government's entire case was established through the search and use of her business records. The government contends that the few items from her records admitted at trial was harmless error even if the search was a violation of the Fourth Amendment.
 
 
 21
 United States v. Sor-Lokken, 557 F.2d 755 (10th Cir.), decided by this court was in part a "common authority" case, but is important for its reference to the indirect use of material obtained in violation of the Fourth Amendment. We there said, at 758:
 
 
 22
 "It is well established that neither evidence seized during an unlawful search nor, as a general rule, evidence indirectly obtained as a result of such illegality is admissible against the victim of the search. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The exclusionary rule determines not only that illegally obtained evidence may not be directly presented to the court, but further that it may not be employed or relied on at all. Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920). 'Of course this does not mean that the facts thus obtained become sacred and inaccessible.' Silverthorne, supra, at 392, 40 S.Ct. at 183. Knowledge of these same facts gained from an independent source may still be employed. Silverthorne, supra."
 
 
 23
 In Sor-Lokken, we relied on and quoted from Wong Sun v. United States, 371 U.S. 471, 487-488 (quoting Maguire, Evidence of Guilt 221 (1959)), as follows:
 
 
 24
 "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' "
 
 
 25
 The use of the wrongfully obtained material in the prosecution is here a significant factor. In Silverthorne Lumber Co. v. United States, 251 U.S. 385, the Court held that information derived from an unlawful search or seizure remains tainted. However, if independently discovered through an independent source the derivative evidence may be purged of an illegal source.
 
 
 26
 The record shows that the government obtained the benefit of unlimited discovery when it conducted the wrongful search of the records seized in violation of appellant's Fourth Amendment rights. These records, among other information, contained names, addresses, and telephone numbers of individuals who testified at the trial against appellant. It is reasonable to assume that these records could have provided information which became the basis for the prosecution and trial of appellant. The government asserts harmless error and has the burden. It urges, as mentioned, that only a few documents from the search were actually admitted, but again this is only part of the problem.
 
 
 27
 Thus if the harmless error doctrine is to be applied as the government urges, see United States v. Hasting, 461 U.S. 499, and United States v. Smith, 888 F.2d 720 (10th Cir.), the consequences of the admission of the several exhibits from appellant's records, plus the use by the government of the wrongfully obtained records for other purposes in the prosecution, if there was any, must be evaluated together. This cannot be done on the record before us. Thus the case must be remanded.
 
 
 28
 The conviction and judgment is REVERSED, and IT IS ORDERED that the case be REMANDED for further proceedings.
 
 
 29
 BRORBY, Circuit Judge, dissenting.
 
 
 30
 I respectfully dissent.
 
 
 31
 The issue we must address is whether Defendant retained a reasonable expectation of privacy in her records prior to the time the police took custody of the records on February 26, 1987.
 
 The district court concluded as follows:
 
 32
 Based upon the credible testimony and the reasonable inferences that can be given to the credible testimony in this case, the Court must find that there was an abandonment by Dowler of these records. I mean that's what the objective test tells this fact finder.
 
 
 33
 This finding by the trial court must be accepted by an appellate court unless it is clearly erroneous. Unlike the majority, I cannot conclude the trial court's finding was clearly erroneous.
 
 
 34
 In reviewing the trial court's decision, we must consider the evidence in the light most favorable to the government.
 
 
 35
 Looking at the evidence, we find Defendant rented the apartment in her name and her daughter's on a month-to-month tenancy. Defendant paid but one month's (November 1986) rent and made no further effort or attempt to pay any additional rent until after the records were seized. By mid-December, it was clearly evident no one was utilizing the apartment. On December 20, the owner placed a notice on the door telling Defendant to pay or get out. Defendant, on her rental agreement, left the name of her chauffeur as the person to contact in the event of an emergency. When contacted, he did not know Defendant's whereabouts and he "suggested" Defendant's property be put into storage. Defendant also left telephone numbers for her business and for a relative. These contacts yielded no results. In the meantime the newspapers were piling up on the doorstep.
 
 
 36
 In late December, the apartment manager moved Defendant's contents to a storage area that belonged to the apartment owner. This storage area was not secured.
 
 
 37
 Defendant had at least three separate opportunities to contact the apartment manager prior to February 26 as she was in town and available but intentionally failed to do so. She deliberately and wilfully chose not to tell the apartment manager of her whereabouts.
 
 
 38
 On February 26, Defendant appeared at the apartment hours after the police had taken the records, paid her unpaid December rent and some collection charges, and received her remaining property.
 
 
 39
 While the majority credits Defendant with making arrangements to pay the rent with her bank in December, this fact was not found by the trial court and is only one of several conflicting and unbelievable stories related by Defendant as she had insufficient monies in the bank. Likewise, the majority characterized Defendant's chauffeur with being her agent. These statements should not be considered under the standard of review we must employ.
 
 
 40
 Whether property has been abandoned is largely a question of intent, which may be inferred from all of the relevant facts and circumstances. The determination of abandonment must be judged by objective standards. The ultimate question is whether the Defendant has retained reasonable expectation of privacy in these particular records. Applying this test to the facts before us, I would affirm the decision of the district court. Defendant, who is fifty-seven years old and does business worldwide, is obviously sophisticated and knowledgeable. She neither paid nor attempted to pay her rent after October 29, 1986. When one fails to pay rent for nearly three months, one should expect the contents will be inspected, inventoried, and moved elsewhere. It therefore follows that the owner of property left in an apartment under these circumstances has no reasonable expectation of privacy in such property. The records therefore came under the landlord's dominion and control, a fact made possible by Defendant's willful acts. Clearly, the landlord could allow other persons to inspect the property. As I cannot say the district judge's decision was clearly erroneous, I would affirm.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3